ROSAMUND BOXILL (FORD), Plaintiff, *v.* EDWARD L. BOXILL, Defendant.

Supreme Court, Special Term, New York County, February 26, 1952.

*Ernest A. McKenzie* for plaintiff.

*Irving Paul* for defendant.

MATTHEW M. LEVY, J. Plaintiff and defendant are sister and brother. From July to October of 1943, they discussed the

matter of a joint business enterprise, and finally orally agreed to become partners, and as such to lease from the owner certain premises known as Number 129 West 119th Street, in New York City. The property was to be used as a home for both parties and was to be operated as a rooming house, and the profits and losses were to be divided equally. Pursuant to this agreement and on October 12, 1943, plaintiff and defendant as tenants signed a three-year lease for the premises, and soon thereafter entered into possession.

On the execution of the lease, plaintiff made the down payment of one month's rent, another payment of a month's rent as security, bought necessary furniture and furnishings and paid the rent for the month of December, 1943. In this initial transaction plaintiff expended the sum of $500, which was her capital contribution to the joint enterprise. The executed lease was delivered to the plaintiff and remained in her possession for a number of years, when it was turned over to the defendant.

The plaintiff's regular occupation is that of a singer; the defendant is a transit employee. From the time the parties entered into possession of the premises, in October, 1943, the plaintiff had the exclusive management thereof, operating the same as a rooming house, collecting rents, paying bills, paying mechanics for repair work and cleaning the premises, and she performed with the help of defendant all services incident to the maintenance of the premises. The plaintiff shared profits and losses with the defendant until on or about April 6, 1948, when (at the time of her leaving the country on a concert tour) she turned over the management of the property to the defendant, along with books, records, vouchers and cash in the sum of $200 as his share of profits then on hand. From that time on, it was the defendant who managed the property. The lease was not renewed upon its expiration date or later — the parties continuing nevertheless to operate under its terms.

The plaintiff was aware that the owner had placed the building upon the market for sale. Unbeknownst to her, however, and on or about August 31, 1950, the defendant purchased the real property in his own name and took title thereto, the deed being recorded in the office of the Register of New York County on September 26, 1950. Since the defendant assumed the management of the enterprise in April, 1948, no accounting between the parties has been had and the partnership and partnership property remain unliquidated.

A partner — and certainly a managing partner — is not free, without restriction, to buy in the reversion of the property where the business of the partnership is conducted. The Court of Appeals in the leading case of *Meinhard* v. *Salmon* (249 N. Y. 458) had before it for determination some of the principal issues now before me. I can best express the crux of that decision in the incomparable language of Chief Judge CARDOZO, speaking for the majority of the court (pp. 463–464): " Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the ' disintegrating erosion ' of particular exceptions (*Wendt* v. *Fischer*, 243 N. Y. 439, 444). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." As a partner, defendant " had put himself in a position in which thought of self was to be renounced, however hard the abnegation " (*Meinhard* v. *Salmon, supra,* p. 468). By purchasing the property for himself, the defendant cut off the chance of possible future renewals of the lease of the property to the partnership or its continuance of possession under the expired lease. The interests of the partnership were in this manner prejudiced (*Mitchell* v. *Reed,* 61 N. Y. 123, 143).

While the agreement between the parties was not in writing, the existence of a partnership is indicated by ample and persuasive confirmatory evidence — such as the execution of the lease by plaintiff and defendant, the contribution of the money by plaintiff necessary to take and furnish the premises, the sharing of the profits and losses between them and the filing of partnership income tax returns — and the arrangement between the parties clearly meets the statutory definition of a partnership (Partnership Law, § 10, subd. 1). The defendant argues that the lease, taken in the names of " Edward Boxill and Rosamund Boxill, as Tenant ", and thus individually signed by them, showed on its face that they were not partners because

they were not so described in the lease. It is true that, in the absence of an express declaration in the instrument, standing alone, the estate created by it would be a tenancy in common (Real Property Law, § 66), but that is subject to any proper proof on the actual relationship between the parties (*Matter of City of New York [Allen St.]*, 148 Misc. 488, 490, affd. 239 App. Div. 775). Be that as it may, the contention seeks to establish a distinction without a difference. Whether the parties are cotenants (*Knolls* v. *Barnhart*, 71 N. Y. 474, 480) or colessees (*Palmer* v. *Young*, 1 Vern. 277; *Hackett* v. *Patterson*, 16 N. Y. S. 170) or tenants in common (*Thayer* v. *Leggett*, 229 N. Y. 152) or coadventurers (*King* v. *Barnes*, 109 N. Y. 267, 285; *Meinhard* v. *Salmon*, 249 N. Y. 458, 462, *supra*) — or partners, as, on all the evidence, I find them to be — the result would be the same.

The defendant contends that the oral agreement of partnership is void as being within the condemnation of the Statute of Frauds. Sections 242 and 259 of the Real Property Law are inapplicable. These provisions of law are intended to affect the creation of a leasehold interest per se, not an agreement of partnership of which the leasehold may be an asset. "It is established, by abundant authority in this State, that a partnership may exist in reference to the purchase, sale and ownership of lands, and that it may be created by a parol agreement" (*Traphagen* v. *Burt*, 67 N. Y. 30, 33). Insofar as subdivision 1 of section 31 of the Personal Property Law is concerned, I agree with Mr. Justice Bijur (*Pinner* v. *Leder*, 115 Misc. 512, 513–514, affd. 200 App. Div. 894), that, while some "doubt has been expressed" in a number of cases as to whether an oral agreement of partnership falls within the Statute of Frauds, "I can see no reason why an agreement for a partnership to continue for more than three years should not be regarded like any other contract which by its terms is not to be performed within one year — in the language of the statute" (see *Kelley* v. *Champlain Studios, Inc.*, 223 App. Div. 388, 393, appeal dismissed 250 N. Y. 559). Even so, the taint of unenforcibility is not so vigorous or indelible as to render the defendant's conduct proper or the plaintiff remediless. For the only effect such a holding could have upon the agreement would be "to convert it into a partnership at will" (*Wahl* v. *Barnum*, 116 N. Y. 87, 97), and "Such a partnership exists until something is done to dissolve it" (*Sanger* v. *French*, 157 N. Y. 213, 234; cf. Partnership Law, § 45).

The fact that the partnership is one terminable at the will of either party does not, it seems to me, diminish the partner's duty to his associate as long as the partnership in fact exists. (Cf. *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229, 251, and *May* v. *Hettrick Bros. Co.*, 181 App. Div. 3, 13, affd. 226 N. Y. 580.) A fiduciary's duty of undeviating devotion should not be conditioned upon whether he may or may not unilaterally end his relationship. Certainly, so long as he enjoys or tolerates for himself the legal status of a trustee, he should be subject to a trustee's obligation, including that of scrupulous and meticulous honor. Until, at the least, the relationship is at a definitive factual and juridical end, the legal immunity of the beneficiary from subtle or open attack by his assumed protector must remain impregnable. In the matter of timing, therefore, there may well be an appropriate line of demarcation between the voluntary termination of a revocable relationship and the judicial imposition of a burdensome loyalty resulting from the continued existence of that relationship. I hold that dissolution must precede active self-interest, not vice versa.

What plaintiff seeks here is an accounting of a going concern. To this she is entitled. "A partner in a going concern may bring an action in equity to call his copartner to account, and to compel him to act in conformity with the agreement, and an accounting may be had without dissolution to enable him to obtain his share of the partnership profits from the benefits of which he has been excluded." (*Sanger* v. *French, supra,* p. 235.) Plaintiff is, if she wishes, also entitled under her prayer for general relief, to judgment decreeing dissolution of the partnership.

Subdivision 3 of section 12 of the Partnership Law provides that "Any estate in real property may be acquired in the partnership name." But it does not follow that I should, as requested by plaintiff, decree that the deed to the premises be reformed to include the name of the plaintiff as grantee. Not only is the grantor, who executed the instrument sought to be modified, not before the court, but there is another fundamental objection. The defendant made a substantial cash payment on account of the purchase price of the realty, and since taking title he has made payments of amortization and interest on the mortgages. He incurred expenses in buying the property, and other disbursements as well in its maintenance. They are not to be forfeited. My purpose, under the circumstances of this case, is to enforce the fiduciary's obligations to his partner —

not to take punitive action against the defendant. The relief to which the plaintiff becomes entitled on this aspect of the case is to have the real estate in question transferred to the partnership by the defendant, unimpaired by the latter and subject to the outstanding liens and encumbrances. Since the plaintiff, seeking equity, must do equity (*Grosch* v. *Kessler,* 256 N. Y. 477, 478), she will be required to share in the proper obligations and expenses incurred by the defendant in the conduct of the partnership business from April 6, 1948, including those involved in the purchase by the defendant of the real estate in question and in its appropriate maintenance thereafter.

Where real property is purchased in the name of the individual partner under circumstances such as are presented here the property is regarded as personal property " ' for the purpose of paying debts and adjusting the equities between the partners.' " (*Mattikow* v. *Sudarsky,* 248 N. Y. 404, 406.) The individual member holds the legal title " ' as trustee for the partnership in respect to the property as personalty; and when the debts are paid and the claims of the several members as between themselves paid, the trust for partnership is discharged * * * and the holder of the legal title then becomes a trustee of such remainder, as the real estate for the benefit of persons interested.' " (*Mattikow* v. *Sudarsky, supra,* pp. 406–407; see, also, *Maas* v. *Goldman,* 122 Misc. 221, affd. 210 App. Div. 845.)

The plaintiff is entitled to judgment by way of interlocutory relief directing the defendant to account for the moneys and other property of the partnership for the period from April 6, 1948, to the present time, that the defendant be restrained from conveying the premises in dispute by deed or otherwise until further determination of this court, and that a lien be imposed on the premises in favor of the plaintiff to the extent of a one-half interest therein. The interlocutory judgment to be submitted should contain provision for the appointment of a referee before whom the accounts shall be taken and stated.

Findings of fact and conclusions of law have been passed upon. The decision has been signed. Submit interlocutory judgment on notice. The plaintiff is not entitled to have judgment against the defendant for the legal fees of the plaintiff in this action, except insofar as they may be included in the normal statutory costs. The counterclaim, which is based on the claim of the defendant that there was an employer-employee relationship between the parties, is dismissed on the merits.