Gbobge Fbaxkenthaler, S.
This discovery proceeding was instituted by decedent’s widow to recover from two brokerage houses securities held by them in decedent’s name. Respondent Maurice Kohn, decedent’s brother, appeared and alleged in a cross petition that he and decedent were engaged in a joint venture with respect to the securities listed in the petition and that he is entitled to 50% thereof. Upon the hearing respondent conceded that he had no claim to certain of the securities and an intermediate order was made for their delivery by the brokers to petitioner. The sole issue then remaining was the extent of the interests of petitioner and respondent in 200 $1,000 bonds of the Central Railroad of New Jersey which had been hypothecated to the Cleveland Trust Company for a loan of $72,000. The parties stipulated that the court dispose of all issues and the trial proceeded on that basis.
The existence of the joint venture is proven by a letter dated November 20, 1945 from decedent to respondent which reads as follows: ‘ ‘ Pursuant to our understanding I have purchased certain securities for you with the moneys received by you from the life insurance policy in the amount of $5,000 left to you by dad. I have added a similar amount toward the purchase of the following securities and have had them registered in my own name for the purpose of convenience and trading. * * * *661 These securities are now in my possession and this letter will serve as proof that you have a one-half interest in these securities. Pursuant to our understanding we are to share equally in all short and long term capital gains and losses and all income derived from the securities. In the event I sell any of these securities and purchase others to replace them the aforesaid venture between us shall continue as to any substituted or additional securities purchased by me for our account. ’ ’
This letter was signed by deceased and was accepted in writing by respondent. It refers to five securities which were purchased at a price of $9,669.55.
During the years intervening between the purchase of these securities and deceased’s death, he was engaged in continuous trading in the stock market and the securities owned by the venture changed in identity numerous times. As a result, it is necessary to examine the dealings had by decedent during these years and to trace so far as is possible from the records in evidence the changing nature of the joint venture capital.
The proof introduced is essentially of two types: first, records of banks and brokerage houses of loans and security transactions had by deceased; and, second, the tax returns of the joint venture, the individual returns of both parties and deceased’s worksheets. As the records of the banks and brokerage houses stood in deceased’s name, they do not by themselves establish a course of dealing, and it is necessary to have recourse to deceased’s own records in order to determine the nature of the transactions. These records, however, having been prepared by decedent himself, have been weighed with considerable care as they are largely self-serving.
The letter above quoted which establishes the existence of the joint venture indicates a capital contribution of $5,000 by each of the parties. Though petitioner contends that decedent received a slightly lesser sum as the proceeds of the insurance policy she has introduced no evidence or testimony in support thereof, and as deceased, a lawyer and an accountant, drew the agreement, it has been construed strictly against him.
During the year 1945 there were no capital transactions by the partnership other than the original purchase heretofore mentioned. It has been conceded by the accountants for both parties that deceased received $82.50 in dividends on this stock. There is no showing that he distributed any part of this sum to respondent and the court, therefore, holds that deceased retained $82.50 for use as uninvested capital of the joint venture. Thus, as at December 31, 1945, the venture owned securities which cost $9,669.55 and had uninvested capital of $412.95.
*662 In February, 1946 the greater part of the aforesaid securities were sold for $9,112.32. At about the same time deceased purchased 1,600 shares of United Corporation at a cost of $10,624.75. The cost of this stock exceeded the cash on hand by $1,099.48, and on February 14 deceased transferred in excess of that amount to the credit of his account with his then stockbrokers. The court finds that this constitutes an advance of $1,099.48 by decedent to the venture. In November, 1946 the United Corporation stock was sold and deceased purchased 680 shares of Diana Stores Corporation common stock. The difference between the sales price of the United stock and the purchase price of the Diana stock was $26.65 which was retained by deceased as uninvested capital.
During the year 1946 decedent received approximately $135 in dividends upon said stock. Half of that sum was reported as income in respondent’s personal tax return and the court finds that respondent received his proper share.
In 1947 deceased sold for $946.43 the remainder of the securities which had been purchased in 1945. The proof further indicates that the income received during the year was divided equally between the joint adventurers.
In 1948 deceased sold the Diana stock for $4,660.15. In August he purchased $40,000 Hudson & Manhattan 1st refdg. 5% 1957 for $10,122.64. These bonds were then delivered to the Chemical Bank and Trust Co., as collateral for loans of $18,600. As a result of these transactions, it appears that deceased was required to advance $1,048.16 on behalf of the joint venture. However, as respondent concedes that deceased advanced $1,490 in connection with this transaction this latter amount will be credited to decedent. As to the income received for 1948 the court finds that one half thereof was paid to respondent.
In May and June, 1949, deceased advanced $2,400 in partial repayment of the existing loans from Chemical Bank and Trust Co., bringing his total advances as at that date to $4,989.48. In November, deceased sold the Hudson & Manhattan bonds and purchased $80,000 New York, New Haven and Hartford R. R. Co., 4%-2022. These latter bonds were then substituted for the Hudson & Manhattan bonds as security for the outstanding loan and a further loan of $7,300 was made. As a result of these transactions the venture netted the sum of $1,371.94 which, if applied to deceased’s credit for prior advances, reduced the sum due him to $3,617.54. On December 16, the loan from Chemical Bank and Trust Co. was transferred to the Bank of the Manhattan Co.
*663 On the same day deceased purchased $30,000 Consolidated Edison Co. Cony. 3% 1963 for $35,675. On December 27 these bonds were pledged to the Bank of the Manhattan Co., which made two further loans — one of $3,550 as an addition to the outstanding loan of $23,500 and a new loan at a different rate of interest in the amount of $32,000. (Evidently .$125 was used to reimburse decedent and the credit again sought by the petitioner therefor cannot be granted.) The transactions with respect to the Consolidated Edison bonds present one of the more difficult problems in the analysis of the dealings of the joint venture. Decedent’s worksheets and personal tax return indicate that he treated these bonds as his personal property and petitioner, therefore, argues that the venture had no interest in them. Respondent, on the other hand, points out that the bonds were purchased through the use of joint venture credit; that deceased was not required to advance his own funds but instead purchased these bonds with the money loaned by the Bank of the Manhattan Company; that the subsequent sale of the bonds resulted in a profit of almost $5,000 and he argues therefrom that decedent should not be permitted to benefit by secret dealings with joint venture assets.
It is well settled that joint adventurers owe a high degree of fidelity to each other. (Meinhard v. Salmon, 249 N. Y. 458, 463-464.) The courts have universally agreed that a joint adventurer or partner is prohibited from self-dealing during the pendency of the venture and that profits so realized belong to the venture (e.g., Meinhard v. Salmon, supra; Selwyn & Co. v. Waller, 212 N. Y. 507; Stem v. Warren, 96 Misc. 362, mod. 185 App. Div. 823, mod. 227 N. Y. 538; 48 C. J. S., Joint Adventures, § 7, subd. a, § 11, subd. b, pp. 831, 840). If the activities of the errant partner are in any wise traceable to the business or assets of the venture they will be treated as part of the venture. (Cf. Partnership Law, § 12, subd 2, § 43.) This standard of rigid fair-dealing is especially high when the self-dealing party is manager of the enterprise. In Meinhard v. Salmon (supra) the court said that one of the joint venturers “ had put himself in a position in which thought of self was to be renounced, however hard the abnegation. He was much more than a coadventurer. He was a managing coadventurer (Clegg v. Edmondson, 8 D. M. & G. 787, 807). For him and for those like him, the rule of undivided loyalty is relentless and supreme (Wendt v. Fischer, [243 N. Y. 439]; Munson v. Syracuse, etc., R. R. Co., 103 N. Y. 58, 74).” (Meinhard v. Salmon, supra, p. 468.) (See Boxill v. Boxill, 201 Misc. 386, 389.)
*664 Applying these general rules to the instant case it is clear that a portion of the loan secured by the Consolidated Edison bonds was given oil the security of joint venture assets. At a time when the venture was first beginning to realize a profit in its dealings, deceased took the opportunity to use its credit and secure for himself a highly profitable arrangement. He advanced nothing, used joint venture credit at least in part and subsequently netted close to $5,000. As he operated the venture in his own name and through his personal accounts, it was an easy task to conceal these personal transactions from respondent. The uncompromising hostility of the courts to self-dealings can find no better field for application. Accordingly it is held that the $30,000 Consolidated Edison bonds and the proceeds thereof are the property of the joint venture.
During the year 1949 the joint venture had a net income of $1,841.05. The information return' of the partnership and the individual income tax returns of deceased and respondent, all of which were prepared by deceased, purported to allocate this income 70% to deceased and 30% to respondent. There is no proof in the record that respondent was aware of this changed proportion, nor can his personal tax return be deemed evidence of his knowledge thereof. His acceptance of a sum which is now shown to represent 30% of the net income cannot therefore be regarded as an -agreement to accept the lesser percentage. Accordingly, decedent will be charged with the sum of $368.21, representing the income retained by him in excess of one half.
Petitioner points out that if deceased’s advances on behalf of the venture are -treated as contributions to capital, his interest was increased to 70% and she argues, therefore, that the division reported in the various tax returns is correct. However, it seems generally accepted that where a joint adventurer contributes in excess of his required capital contribution in order to finance joint venture enterprises, he does not thereby acquire a secret capital interest but the advances so made must be paid before profits are divided. (Migel v. Heller, Hirsh & Co., 151 App. Div. 637, affd. 208 N. Y. 636; 48 C. J. S., Joint Adventures, § 6, subd. a, p. 830.) Decedent may not unilaterally increase his interest just at the time when profits are being realized and respondent is not bound by the altered proportions. (Cf. Hayne v. Sealy, 71 App. Div. 418; see Matter of Silkman, 121 App. Div. 202, 214, affd. 190 N. Y. 560.) Moreover the fiduciary duty owed respondent by deceased would be nullified were the latter’s unilateral action allowed to constitute a permanent change of interest. Accordingly, the court holds that respondent’s interest in the joint venture remained unchanged during its existence.
*665 In March of 1950 deceased sold the New York, New Haven and Hartford bonds and liquidated the loan from the Bank of the Manhattan Co., netting a total of $11,744.20. Commencing in March, deceased began a series of purchases which resulted in the acquisition of 200 $1,000 Central Railroad of New Jersey 3%’s 1987. The total cost of these bonds, exclusive of accrued interest, was $93,076.25. They were transferred first to the Bank of the Manhattan Co., and then to the Cleveland Trust Co., as security for loans which totaled $72,000 at the date of deceased’s death. On June 22 the Consolidated Edison bonds were sold and the loan given on them was liquidated, the venture netting $8,616.84.
The issue raised by these transactions concerns the ownership of the 200 Central Railroad of New Jersey bonds. It is conceded that at least 80 are the property of the joint venture and the parties appear to agree that title to the -remaining 120 depends largely upon the ownership of the Consolidated Edison bonds which have hereinabove been held to belong to the venture. According to the court’s figures, deceased received $8,616.84 upon the Consolidated Edison bonds, $11,744.20 upon the New York, New Haven and Hartford and $72,000 as a loan, a total of cash received of $92,391.04. The difference between this sum and the cost price of the Central Railroad of New Jersey bonds is $685.21. (In making these computations the court has excluded from the purchase price the amount of accrued interest — $1,690.87 — which sum will be credited to deceased in the income account.) It thus appears that but for a small sum deceased was possessed of joint venture assets sufficient to make the numerous purchases of Central Railroad of New Jersey bonds. Under the general principles of law heretofore enunciated with respect to the duty owed by a managing adventurer, the court holds that all of these bonds are the property of the joint venture, subject, of course, to the advance made by deceased in the sum of $685.21. Deceased’s inability or unwillingness to maintain a separate account for the joint venture cannot serve as a shield for questionable transactions. It would be highly inequitable to permit him to withhold the greatest part of the profits realized by the venture when he had shared the prior losses equally with respondent. It is perfectly clear that the purchase of the bonds in question was attributable to the financial status of the venture and that the transactions would have been impossible had deceased not been able to use the proceeds of the bonds which concededly had belonged to the venture. Peiitioner’s reliance upon deceased’s worksheets as a ground *666 for treating the bonds as his individual property is unwarranted ; a party acting in a fiduciary capacity may not arrogate gain therefrom merely by the scheduling of profitable transactions in his personal account. Accordingly, as of deceased’s death on November 1, 1950, the joint venture was the owner of 200 Central Railroad of New Jersey bonds which had been hypothecated to the Cleveland Trust Co., for a loan of $72,000 subject to capital advances by decedent of $4,302.75.
Deceased’s worksheets evidence the receipt by the joint venture of $450 interest upon the New York, New Haven and Hartford bonds and $2,112.50 interest upon the Central Railroad of New Jersey bonds. Decedent evidently received a further sum of $450 as interest upon the Consolidated Edison bonds. Respondent’s accountant states that interest in the amount of $2,166.67 has accrued on the Central Railroad of New Jersey bonds from July 1 to November 1 and this statement is not questioned by petitioner. Deducting the sum of $1,690.87, which represents the accrued interest on the Central Railroad of New Jersey bonds at the time of their purchase, the gross income of the venture for the year 1950 was $7,538.30.
According to the records of the Bank of the Manhattan Company and the Cleveland Trust Co., interest payments in the sum of $1,350.33 had been made during the year. A further sum of $27 had accrued at the time of decedent’s death and the net income for the year 1950 was $6,160.97.
Respondent has conceded receipt of $1,500 and therefore is entitled, as his share of the net income, to the further sum of $1,580.48. Petitioner has introduced in evidence a check in the amount of $205.05, the stub of which states: 1 ‘ Int. 1/1/50-6/30/50 — net ” and asserts that this represents a payment on account of income. However, no proof has been offered to show that the face of the check recited its nature and respondent cannot be held to a self-serving declaration of deceased. The sheet of computations which was introduced by petitioner to establish her contention with respect to this check is also self-serving and cannot be deemed to bind respondent.
Since deceased’s death petitioner has sold 65 of the Central Railroad of New Jersey bonds and with the proceeds thereof has liquidated a part of the outstanding loan. Respondent seeks to charge her with the difference between the value of the bonds at the present date and their highest value since the date of deceased’s death. He argues that inasmuch as the property of the joint venture vested in him as the surviving member of the venture, petitioner was guilty of conversion in, first, pur *667 porting to exercise any dominion over the bonds, and, second, in failing to sell them at their peak value. For the reasons hereinafter stated this request is denied.
The issue here presented results from a conflict between two well-recognized rules of law: first, that upon the death of the partner or joint adventurer the assets of the enterprise vest in the survivor and only he is empowered to liquidate the business, and, second, that the executor or administrator is under the duty to take possession of property standing in deceased7s name and not pay it over to third persons unless and until he is satisfied that it was not the property of deceased.
In Bradley v. Roe (282 N. Y. 525), an analogous situation was presented. There the temporary administrators took possession of securities found in deceased’s safe-deposit box which were registered in claimant’s name. Upon their refusal to turn over the security without a court order an action in conversion was instituted. The court held that as the temporary administrators did not assert personal claim to the property they were justified in remitting plaintiff to a proceeding under the Surrogate’s Court Act.
The reasoning of that decision seems properly applicable to the present ease. Petitioner presumably had no knowledge that the bonds which were in deceased’s name were the property of the joint venture. After notice of demand was served upon her she was entitled to have respondent prove his claim in court. (See Matter of Monplaisir, 62 N. Y. S. 2d 320.) There can be no recovery against petitioner individually if she has acted in good faith. (Chisholm v. National City Bank of N. Y., 176 Misc. 208.) Petitioner did not assert a personal claim to the bonds; instead she states that she is holding the proceeds pending the court’s determination in the present proceedings. As it appears that petitioner exercised due care in the sale of the bonds, respondent’s request for a surcharge is denied.
The decree herein should direct petitioner to take immediate steps to transfer title of the remaining bonds in the possession of the Cleveland Trust Co., to respondent as the surviving member of the joint venture subject to the outstanding debt and to turn over to him the difference between the sum received from the sale of the bonds and the amount of loans paid off together with any interest received since deceased’s death. Respondent should be directed to sell the remaining bonds within a reasonable time, to liquidate the outstanding loan, and to reimburse petitioner in a sum representing the difference between deceased’s capital advances and the total of (1) the 1950 income due respondent and (2) the unpaid balance of the *668 1949 income due respondent. The remainder should be divided equally between petitioner and respondent. The decree may also contain a provision reserving the jurisdiction of this court to make further rulings hereunder.
Submit decree on notice.
Supplemental Opinion
The decision of the court heretofore rendered is modified to read that there be charged against deceased’s advances but one half of the sum netted as a result of the sale of the Hudson & Manhattan bonds and the purchase of the New York, New Haven & Hartford securities. Upon the decision as modified and the stipulation submitted herein, the petitioner’s counter decree has been signed.