**DAYVAULT**

v.

**BARUCH OIL CORP. et al.**

No. 4753.

United States Court of Appeals,
Tenth Circuit.

March 13, 1954.

**336**

Frank Bezoni, Midland, Tex., and Dan Moody, Austin, Tex. (Clifford N. Bloomfield, Jr., Cheyenne, Wyo., on the brief), for appellant.

W. J. Wehrli, Casper, Wyo. (Jack D. Emery, Casper, Wyo., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By this action in the District Court of Wyoming, the appellant sought to impress a constructive or resulting trust upon an undivided ⅙ interest in oil and gas leases in Wyoming, in which each of the defendants owns or claims some interest. With respect to one lease, the appellant sought alternative relief in the form of shares of corporate stock of the corporation holding an interest in the lease. The trial court granted a summary judgment based on the pleadings, with the attached contracts and the deposition of the plaintiff, holding that the claim was for an interest in real estate and barred by the statute of frauds.

As we summarize the complaint, it alleges that early in 1949, the appellant and Ursillo, Nettune and Baruch orally agreed in New York to negotiate for the acquisition of oil and gas leases in Wyoming for the mutual benefit of all the parties and corporations to which the leases might be assigned; that such parties would cooperate in the financing and development of the acquired leases, and each would own an undivided ⅙ interest in the property after an undivided ½ interest had been devoted to the promotion of the joint enterprise. That pursuant to the common understanding and agreement, the plaintiff induced Pearson and Irwin to come to New York for the purpose of negotiating for the sale of federal oil and gas leases owned by them; that as a result of such negotiations, and on June 17, 1949, Pearson and Irwin assigned federal oil and gas lease Number 078317, covering approximately 2560 acres of public domain in Wyoming to plaintiff and defendant Ursillo in consideration of $2.00 per acre or $5120.00 for which appellant executed his promissory note; that title to the lease was taken in the name of appellant and Ursillo for the purpose of assigning the same to the defendant Kenilind Oil & Gas Company, Inc., the stock of which would be sold primarily for funds to explore and develop the assigned lease; that if the parties succeeded in selling the stock to finance planned drilling operations, plaintiff was to receive 133,334 shares of the 3,000,000 authorized shares as his interest in the adventure. That the stock-selling scheme was un-

successful and he thereupon became entitled to an undivided ⅙ interest in the lease. It was also alleged that as a result of the same negotiations, and in furtherance of the same understanding, Pearson and Irwin entered into a written agreement with Ursillo on July 27, 1949, under which the assignor agreed to assign three other oil and gas leases, described as federal oil and gas leases Numbers 078316, 078318 and 078319, covering approximately 6640 acres of the public domain in Wyoming, in consideration of $2.50 per acre, to be paid as, if and when the assignments were executed and delivered; that these leases were taken in the name of Ursillo for the benefit of the joint adventurers to facilitate the sale and disposition of interests therein to finance the exploration and development of the leases; that in furtherance of the joint enterprise, appellant and Pearson arranged for a drilling contractor and supervised the drilling of a dry hole on lease Number 078317; that sufficient information was obtained to justify further prospecting, and thereafter through mesne conveyances, lease Number 078317 became vested in Isbrandtsen Company, Inc. to the extent of 31%; to Sinclair Oil and Gas Company to the extent of 51%; and 19% to Kenilind Oil & Gas Company; that leases Numbers 078316, 078318 and 078319 became vested in Sinclair to the extent of 51%, Isbrandtsen individually to the extent of 31%, and 19% to Baruch Oil Corporation; that Sinclair has since drilled more than one producing well upon some of the leases and is now producing oil therefrom; that all the interests of the named parties were acquired with full knowledge of, and subject to claims of plaintiff; that Ursillo, acting as the authorized agent of all the named defendants, connived and schemed to defraud plaintiff of his interest, and at all times has refused to deliver his interest in the leases, by reason of which a constructive trust is raised in favor of the appellant against the title of the defendants for an undivided ⅙ interest in and to all of the described leases.

The prayer was for title and possession of an undivided ⅙ interest in the entire leasehold, unless the court held that appellant was entitled only to a stock interest in the Kenilind Oil and Gas Company as the holder of lease Number 078317, in which event he prayed for 133,334 shares of stock in that company. Appellant also prayed for his proportionate part of the proceeds of the oil and gas marketed and sold from the premises, and $50,000.00 exemplary damages.

The defendant appellees answered, denying the agreement, but admitting the record ownership of the leases as alleged. As an affirmative defense, it pleaded that Sinclair Oil and Gas and Isbrandtsen Company were indispensable parties to the suit. As a second affirmative defense, appellees pleaded the statute of frauds of the state of New York, where the contracts were said to have been made and entered into, see Section 31 of the Personal Property Law of New York, McK.Consol.Laws, c. 41, and Sections 242 and 259 of the Real Property Law of the state of New York, McK. Consol.Laws, c. 50; and the statute of the state of Wyoming, where the contracts were to be at least partially performed. See Section 5–101, Wyoming Compiled Statutes 1945. It was then alleged that the Kenilind Oil and Gas Company had caused to be issued to the appellant 133,334 shares of stock in accordance with its contract, and this stock was tendered into court in satisfaction of all contractual obligations to appellant. It was then affirmatively alleged that on or about June 24, 1949, Irwin assigned lease Number 078317 to appellant, and on June 30, 1949, appellant assigned the lease to the Kenilind Oil and Gas Company, (apparently in accordance with the antecedent agreement) reserving only the 2½% overriding royalty to Irwin as provided in the assignment from Irwin; that on September 20, 1949, Kenilind Oil and

Gas Company agreed to assign to Isbrandtsen Company an undivided ½ interest in the lease, in consideration of which Isbrandtsen agreed to provide $80,000.00 for the drilling of a well upon the lease; that the undivided ½ interest in the lease was subsequently assigned to Isbrandtsen Company for the drilling of the well at a cost of approximately $78,000.00. It was further alleged that on September 17, 1949, lessee Irwin assigned an undivided ½ interest in leases 078316, 078318 and 078319 to Baruch, Nettune and Company, Inc., and at the same time assigned the other ½ undivided interest in the leases to Hans J. Isbrandtsen; that on December 18, 1950, Baruch, Nettune and Company assigned all of its interest in the three leases to Baruch Oil Company, and Isbrandtsen assigned and transferred the other undivided ½ interest to Isbrandtsen, Inc. It was further affirmatively alleged that to obtain further exploration of the leases after the abandonment of the Isbrandtsen well on lease Number 078317, the then record owners of all the leases entered into two agreements with the Sinclair Oil and Gas Company dated June 9, 1951. Under these agreements, Isbrandtsen agreed to convey to Sinclair an undivided 20% interest in all four of the leases; Kenilind Oil and Gas Company agreed to convey to Sinclair a 31% interest in lease Number 078317, and Baruch Oil Company agreed to convey a 31% interest in leases Numbers 078316, 078318 and 078319. That as a result of these transactions, all of the parties named owned interest in the oil and gas leases involved here as alleged in the appellant's complaint; and that the interests were so acquired and the wells drilled with the knowledge and consent of the appellant and with his consent for the purpose of developing the property, and appellant is therefore estopped and barred from claiming any interest in the leases. A counter-claim prayed damages for each of the corporate defendants in the sum of $500,000.00.

In the deposition taken by the appellees, the appellant substantially reaffirmed the material allegations of his complaint. He told of the New York meeting in which Ursillo was introduced as the manager of the Nettune-Baruch oil interests, who stated that he was "looking for a deal with a lot of bloom to it." He related how the parties agreed to negotiate for some likely oil and gas leases in Wyoming, ½ of which would be sold to promote the development of the leases, and the other ½ divided in three equal parts, ⅓ to appellant, ⅓ to Ursillo and ⅓ to Nettune and Baruch. He then told of contacting Pearson, with whom he had discussed some Wyoming oil and gas leases in Texas; of how Pearson and Irwin came to New York at his instance; of the negotiations between all of the parties, resulting in Pearson's assignment of an oil and gas lease covering lease Number 078317 to him and Ursillo for his promissory note; and of the subsequent agreement of Pearson and Irwin to assign the other three leases in accordance with the contract attached to the complaint. He also related generally the transfer of the first lease to the Kenilind Company and of a sale of an interest therein to Isbrandtsen for funds with which to pay his note to Pearson, and the purchase price of the other three leases. He related how he and Ursillo received the difference between $2.00 per acre paid Pearson for the three leases covering 6640 acres, and $2.50 per acre received in the purchase agreement; and how these funds were divided between them and used as expenses for the promotion of the enterprise. He also acknowledged receipt of other sums from Ursillo used for travel and other necessary expenses while supervising the drilling of the Isbrandtsen well. He testified to having made repeated demands upon the defendants for the assignment of his interest in the leases, and of Ursillo's protracted promises to comply.

In its order granting the summary judgment, the trial court treated the pleadings and the evidence as stating a claim to an undivided ⅙ interest in the oil and gas leases under the oral agreements as compensation for services rendered the defendants or some of them. Thus treated, the trial court correctly applied the statute of frauds of both the states of New York and Wyoming, for the laws of New York forbid the enforcement of an oral agreement to establish a trust or for the purchase or sale of any interest in real estate, Section 31, Personal Property Law of New York; or any oral contract for the sale, creation, grant, assignment, surrender or declaration of an estate in real property. Sections 242 and 259, Real Property Law of New York. And, the statutes of Wyoming also forbid the enforcement of any oral contract for the sale of real estate. Section 5–101, Wyoming Compiled Statutes 1945. See also Mecum v. Metz, 30 Wyo. 495, 222 P. 574; Montana & W. Oil Co. v. Gibson, 19 Wyo. 1, 113 P. 784.

But, in applying the statute of frauds, the courts generally draw a clear distinction between oral contracts for the sale, transfer or creation of an interest in real property and a partnership or joint adventure to acquire, sell and deal in real estate. The basis of the distinction is that an oral agreement between parties to acquire, sell or otherwise deal in real estate and to share in the speculative profits is an agreement concerning personal, not real property; the real property acquired and dealt in is regarded as personal property among the partners to the speculative adventure and hence not within the statute of frauds. 49 Am.Jur. p. 545, Section 220, 221; Annotations 18 A.L.R. 491; 95 A.L.R. 1244.

Since the earliest times, New York has enforced oral agreements for partnerships to purchase, sell and own lands. The statute of frauds is said not to be "so broad as to prevent proof by parole of an interest in lands; it is simply aimed at the creation or conveyance of an estate in lands without a writing." Chester v. Dickerson, 54 N.Y. 1, 13 Am.Rep. 550. See also Mattikow v. Sudarsky, 248 N.Y. 404, 162 N.E. 296. Neither Sections 242 and 259 of the Real Property Law, nor Section 31 of the Personal Property Law of New York, forbid an oral partnership agreement for the purchase, sale or ownership of realty. Boxill v. Boxill, 201 Misc. 386, 111 N.Y.S.2d 33; Weisner v. Benenson, 275 App.Div. 324, 89 N.Y.S.2d 331, 332, 339. And, the rule applies with facility to transactions involving mineral lands such as oil and gas leases. Hifler v. Calmac Oil & Gas Corp., Sup., 10 N.Y.S.2d 531; Mulroy v. Sessions, Sup., 38 N.Y.S.2d 853. Wyoming adheres to this rule. See Hoge v. George, 27 Wyo. 423, 200 P. 96, 101, 18 A.L.R. 469, quoting with approval from Chester v. Dickerson, supra, and holding that "when profits have accrued from the purchase and resale of real estate in pursuance of an oral contract of joint adventure, the statute of frauds of this state will not affect the right of one of the parties to the contract to recover his share of such profits * * *."

If title to partnership property is placed in the name of one of the partners, a fiducial relation is thereby created, as to which he owes the highest degree of honor and good faith. Mattikow v. Sudarsky, supra; Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1; Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 7 P.2d 206, 80 A.L.R. 1037; Blackner v. McDermott, 10 Cir., 176 F.2d 498. The partnership property is regarded as personal property for the purpose of adjusting the equities of the parties, see Mattikow v. Sudarsky, supra; Boxill v. Boxill, supra; or equity may impress a trust upon the property for the benefit of the joint adventurer. Meinhard v. Salmon, supra. Or, equity may impress a constructive trust upon the real property for the benefit of the joint adventurers to prevent unjust enrichment and to en-

force restitution. Meinhard v. Salmon, supra; Oral Trusts of Land, 20 Harv. L.R. 549; Harlan F. Stone, Resulting Trusts and the Statute of Frauds, VI Col.L.R. 326; Costigan, Trusts Based on Oral Promises, 12 Mich.L.R. 513; Scott in 36 Harv.L.R. 656. Or, estoppel may be utilized to prevent the imposition of the statute of frauds as a shield for fraud. Wallis v. Bosler, 70 Wyo. 129, 246 P.2d 771; Vogel v. Shaw, 42 Wyo. 333, 294 P. 687, 75 A.L.R. 639. Whatever procedural devices may be employed, courts of equity are not impotent to effect complete justice between parties to a joint adventure.

 The pleadings and the evidence in this posture of the case establish a rather typical joint adventure to acquire, explore and develop oil and gas leases. It is a familiar arrangement in the oil country for those having knowledge and access to oil and gas leases to match their know-how with those who have access to risk capital for the development of oil properties. While not good business practice, it is not uncommon for the joint adventurers to orally agree that one of them shall hold title to the leases in order to expedite the promotion of the joint enterprise. See Blackner v. McDermott, supra; Mulroy v. Sessions, supra; Hifler v. Calmac Oil & Gas Corp., supra. True, the prayer was for title and possession of an undivided interest in real property, but the prayer does not govern appellant's right to relief. The dimension of his claim is measured by what he pleaded and proved, not by what he demanded. Blazer v. Black, 10 Cir., 196 F.2d 139, 147. "If the relief asked for goes too far, it does not follow that no relief can be granted." Mattikow v. Sudarsky, supra [248 N.Y. 404, 162 N.E. 297]. He may recover upon any theory legally sustainable under the established facts regardless of the demands in the pleadings. Hamill v. Maryland Casualty Co.,

10 Cir., 209 F.2d 338. The appellant here not only prayed for specific performance of the oral agreement, he also prayed for an accounting of the rents and profits from the joint adventure, and the court is not powerless to grant that relief. See Kasishke v. Keppler, 10 Cir., 158 F.2d 809, wherein this court held the statute of frauds inapplicable to a joint adventure for the development of oil properties and granted an accounting. A joint adventure having been alleged and proved, the nature and extent of appellant's relief is governed by the rules underlying partnership and joint adventure. Generally, one co-adventurer is empowered to sell and convey the property involved in the enterprise if such sale is not expressly prohibited and is in furtherance of the joint enterprise. Taylor v. Brindley, 10 Cir., 164 F.2d 235; Boxill v. Boxill, supra; Wyoming-Indiana Oil and Gas Co. v. Weston, supra.

 The pleadings and proof show that during the existence of the joint adventure, assignments were made to third parties allegedly in furtherance of the joint enterprise. We do not determine whether those transactions were in good faith and in furtherance of the joint enterprise, hence binding upon the appellant. That is a matter for the trial court to determine in the exercise of its jurisdiction to adjust the equities of the parties and do full justice. We hold merely that as against a motion for summary judgment the complaint and the proof in support thereof establish a joint adventure, as to which the statute of frauds of neither the State of New York nor Wyoming is applicable, and that appellant is entitled to share in the profits of the joint adventure under the equitable rules underlying the same.

The judgment is reversed and the case remanded with directions to proceed in accordance with the views herein expressed.