Morris Eder, J.
The plaintiffs bring this suit asserting they are joint adventurers with the defendant Summers (hereafter sometimes styled defendant) in experimenting with, developing and ultimately perfecting a quick operating locking fastener, a device primarily intended for use in aircraft but adaptable to other fields, conceived by the defendant but not then successful functionally or mechanically. In brief, it is the plaintiffs ’ claim that in February, 1938, the plaintiffs and defendant entered into an oral agreement whereby the plaintiffs, engineers and expert tool and die makers, and proprietors of an engineering enterprise known as “ Diecasters, Inc.,” agreed to undertake (1) developmental work to perfect the mechanical action of the fastener, with all expenses to be borne by them, and (2) experimental work on dies and samples intended to accomplish mass production of the fastener, the cost to be shared equally between them; that the parties agreed that plaintiffs were to share equally with defendant in all patents, devices and improvements, as well as royalties, profits and proceeds, as long as these continued; that plaintiffs duly performed the terms of the agreement on their part to be performed but that the defendant concealed from plaintiffs the success of the fastener and its successful commercial promotion and exploitation until the same were discovered by them; that the defendant has failed and refused to perform the agreement on his part and an accounting and other appropriate relief are asked for. The codefendants are charged to have aided and assisted the defendant to deprive the plaintiffs of their benefits under the said agreement. The material allegations of the complaint are denied.
The defendants made the following contentions: (1) That the evidence discloses that the cause of action, if any, belongs to Diecasters, Inc., and is not in the plaintiffs; (2) that the agree *536 ment does not constitute a joint venture as it contains no provision for sharing losses between the parties, and, also, it establishes no partnership association or relationship; (3) even assuming the existence of the agreement plaintiffs have failed to perform; (4) plaintiffs are guilty of laches.
As to the basic factual situation the defendants argue: “ The main issue of fact, therefore, is whether or not Summers entered into a joint venture, as plaintiffs’ counsel described it, with plaintiffs, or whether he employed Diecasters, Inc. to produce some diecast cam collars to try on his fastener in place of the machined cam collar by Roe. ’ ’
I have reached the conclusion that plaintiffs are entitled to recover.
Voluminous testimony has been taken and numerous exhibits have been received and examined; after due consideration thereof and after hearing and seeing the witnesses and observing their demeanor in the witness chair, I have no hesitancy in concluding and finding on the disputed issues of fact and on the issue of credibility that the plaintiffs ’ version is the true one and that the claims made by the defendants are without foundation in fact. I find, also, that the plaintiffs duly performed all the terms of the contract on their part to be performed and that the defendant Summers failed and refused to fulfill the terms of the contract on his part to be performed; further, that the codefendants have aided and assisted the defendant Summers to prevent the plaintiffs from receiving their benefits under the agreement.
In advancing the point that the evidence discloses that the cause of action resides in Diecasters, Inc., and not in the plaintiffs as individuals, it is predicated on the claim of the defendants that Summers did not deal with the plaintiffs, as individuals, but that he dealt with Diecasters, Inc., and that this is manifested by Summers’ checks which ar» made to the order of Diecasters, Inc., indorsed by it and deposited in its bank to its account and credit. This is not conclusive proof of the tenability of the claim; it is but a circumstance, to be considered along and weighed with all the other facts and circumstances in the case in arriving at the ultimate finding of veracity. Attempts to overemphasize a single incident, or to overstress minor ones, must fail in the light of reality.
Plaintiff Frank Mariani testified that Summers stated: ‘ ‘ If you go ahead and you work on this problem at your own expense and you make some samples which will be O.K. throughout the trade, then I will be glad to go fifty-fifty on the profits, royalties and patent rights from the items.
*537 “ Q. * * * When Mr. Summers said he would be willing to go fifty-fifty did he say with whom he was willing to fifty-fifty? * * *
“ The Witness: He was talking about Diecasters.
“ Q. He offered a fifty per cent interest to Diecasters? A. That is right. * * *
“ Q. On this second occasion, Mr. Mariani, what conversation was there between Mr. Summers and yourself? A. Well, I told him that I studied out the matter and I also spoke to my brother Marty and I thought that it was advisable for me to go into it and I made it very clear that the question of Diecasters was out because I always keep Diecasters for the die casting business % * #
“ Q. Did you say to Mr. Summers that the question of Die-casters is out? A. That is right.
“ Q. Is that what you said to him? A. That is right.
“ The Court: Tell us what you said to him. * * *
‘' I told him that the question of Diecasters was out and that I was willing to go in and do the experimental work provided he will entertain the idea to have Marty and me and him on a fifty-fifty basis.”
It is clear from this testimony that the agreement was made with the plaintiffs, as individuals, and not with Diecasters, Inc.
It is true that Summers’ checks are made out to the order of Diecasters, Inc., but this is readily understandable. The plaintiffs having used the facilities of Diecasters, Inc., it is not extraordinary that they were unconcerned that the checks were made to Diecasters, Inc. Besides, there was no motive for the plaintiffs to be untruthful about the matter; they were and are the sole stockholders of Diecasters, Inc., its sole owners, and they themselves operated the business. They could just as easily have said that the agreement was made with Diecasters, Inc., and have accomplished the same result; and as far as he, Summers, was concerned, in truth it made no difference to him whether Diecasters, Inc., or the plaintiffs, as individuals, handled the work; he was only interested in a successful outcome. This claim is merely an endeavor to obtain the dismissal of the complaint on a ground that is devoid of merit.
As to the contention that the agreement does not constitute a joint venture in that it contains no provision for sharing losses between the parties and also establishes no partnership relation between them, it is without force or effect. It is not indispensably essential to the existence of a joint venture that there be an agreement for the sharing of losses between the parties (Orvis v. Curtiss, 157 N. Y. 657; 30 Am. Jur., Joint Adventures, *538 p. 682, § 12); the sharing of profits is a basal ingredient of a joint venture (30 Am. Jur., Joint Adventures, p. 693, § 32), but, as said, not necessarily losses; nor is it imperatively requisite that a legal partnership relation exist; there can be a joint venture without it (Schantz v. Oakman, 163 N. Y. 148; King v. Barnes, 109 N. Y. 267, 285; Marston v. Gould, 69 N. Y. 220, 224); it is a matter of contract and in the absence of an express agreement every party to a joint venture is bound by his relation to his associates to share with them the losses sustained which, in the absence of an agreement fixing a different ratio will be presumed to have been intended to be in the same proportion as they share the profits. (Matter of Marvin, 180 App. Div. 778; 33 C. J., Joint Adventures, p. 865, § 80.)
' Where a partnership relation and, interest are asserted the elements of a partnership must be shown; but this is not required where only a joint venture is claimed; and insofar as the right to an acconnting and concomitant relief is concerned it is enough that the parties stand in a mutual and confidential relationship to each other and have a joint interest in the result of the venture (Schantz v. Oakman, supra, p. 157); as far as the rights and liabilities are concerned, they rest upon and are to be enforced pursuant to the terms of the agreement. (King v. Barnes, supra, p. 285; Marston v. Gould, supra, p. 225.)
I do not agree with plaintiffs’ contention that a partnership is shown to exist; none of the attributes of a partnership appear; that plaintiffs claim a promise by Summers to give them, in áddition to half the profits, a half interest in all patents, devices and improvements, does not result in ereáting a partnership; it is merely a further incentive and special benefit which the plaintiffs acquired in the sense of a further monetary return, and no more. That one acquires a coproprietary interest in a patent or patent rights by virtue of an agreement does not result in creating a partnership; such an agreement is but an executory contract, valid and enforcible and passes legal title to the assignee (Spears v. Willis, 151 N. Y. 443; Thourot v. Holub, 81 App. Div. 634); and as between the parties a verbal assignment is valid and passes an equitable right (Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co., 288 F. 330, affd. 266 U. S. 342); that is the legal effect; it creates such interests, but not a partnership.
The agreement testified to by plaintiffs, and found to be the fact, does not in terms provide for a partnership nor contemplate any of the incidents of one; there is no sharing of profits as ...principals; there is no evidence indicating that the parties inténded' to carry on a business as pártners and to' subject *539 themselves to the incidents and liabilities of such an arrangement ; it was simply a joint venture. (Fechteler v. Palm Bros. & Co., 133 F. 462.) The prima facie presumption of the existence of a partnership by virtue of a share of the profits of a business created by subdivision 4 of section 11 of our Partnership Law, relied on by plaintiffs, is inapplicable upon the facts here, and, moreover, the evidence at bar fully rebuts and refutes it.
The above-mentioned provision of the Partnership Law is but a codification of the rule heretofore existing, so well expressed in the FecMeler case, that while it is true that a presumption of partnership arises from participation in profits, “ it has never been regarded as an irrebuttable presumption, and its cogency as evidence of a partnership has been much relaxed by subsequent cases in which a wider view of the subject has been taken. ’ ’ (P. 467.) And as there further said: “ The most that can be said of it, as the law is now understood, is that a participation in profits is strong evidence of a partnership, and enough, unless explained by other circumstances showing a different relation.” (P. 467.)
In net result, therefore, only a joint venture has been proved; and in determining the sum which plaintiffs may be entitled to receive the rule with respect to sharing of profits and losses as applied in the case of a partnership is to govern, that is, plaintiffs will share in the net profits only. (King v. Barnes, supra, p. 285; Marston v. Gould, supra, p. 225.)
On the matter of laches the plaintiffs’ right to redress is not barred by this claim; the defendants were not prejudiced thereby; the plaintiffs acted with reasonable despatch upon discovery of the true facts.
A joint adventurer is a fiduciary for his coadventurers and is under the highest duty to act honestly and faithfully (Meinhard v. Salmon, 249 N. Y. 458; Pink v. Title Guar. & Trust Co., 274 N. Y. 167; Wendt v. Fischer, 243 N. Y. 439; 443; Byrne v. Barrett, 268 N. Y. 199, 207); profits wrongfully diverted from a joint venture are subject to a constructive trust (Meinhard v. Salmon, supra; Beatty v. Guggenheim Exploration Co., 225 N. Y. 380, 386; Selwyn & Co. v. Waller, 212 N. Y. 507, 512, 513; Pink v. Title Guar. & Trust Co., supra); and the faithless fiduciary must account to his associates in the enterprise (eases, supra) and must convey to them a proprietary interest in the patents as agreed. (Burr v. De La Vergne, 102 N. Y. 415; Johnson v. Brooks, 93 N. Y. 337.)
The plaintiffs are entitled to equitable relief. Judgment for plaintiffs. An accounting is ordered and the defendants directed to convey to plaintiffs a one-half interest in the patents and *540 patent rights; the judgment may provide that upon the defendants ’ failure to make such conveyance that the judgment shall constitute sufficient muniment for vesting title. The defendants are directed to pay the fee and other expenses of the referee to be appointed upon the accounting, as well as the reasonable expenses incurred by plaintiffs for the service of counsel and accountant upon such accounting, the amount to be later fixed by this court. (Winthrop Chem. Co. v. Blackman, 159 Misc. 451.) Costs to plaintiffs to be taxed as in an action at law. Exception to defendants. Proposed findings passed upon. Submit decision and judgment on notice. Thirty days ’ stay; sixty days to make a case.