Farris O. ANDERSON, Plaintiff-Appellee,

v.

NATIONAL PRODUCING CO., a corporation, and George A. Hamid, Defendants-Appellants.

No. 200, Docket 24900.

United States Court of Appeals Second Circuit.

Argued Jan. 8, 1958.

Decided April 1, 1958.

Writ of Certiorari Denied June 9, 1958.

See 78 S.Ct. 1151.

Ralph Stout, New York City (Abraham Males, New York City, and Louis Rothbard, Brooklyn, N. Y., on the brief), for defendants-appellants.

Richard W. Condon, New York City (James L. Nelligan, New York City, on the brief), for plaintiff-appellee.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

This is an appeal by the defendants, National Producing Co. and George A. Hamid from a judgment for the plaintiff for $55,000 entered by Judge Bruchhausen, Eastern District of New York, on the verdict of a jury.

The plaintiff, an aerial acrobat, was in the employ of one Peaches O'Neill who was engaged by the defendant National Producing Co. to supply an aerial act to The Hamid-Morton Circus. On May 6, 1952, during a performance in the Jaffa Shrine Temple at Altoona, Pennsylvania, where plaintiff was one of six girl aerialists, the plaintiff fell 18 feet from the rig where she was performing, thereby breaking both heels and suffering injuries to her spine. Miss Anderson alleged that the fall was caused by the absence of a safety loop on the rig and that this

was due to the negligence of the riggers who were employees of the National Producing Co. and of The Hamid-Morton Circus.

Suit was brought against the National Producing Co. and George A. Hamid, the appellant, who, concededly, is not individually liable unless there was a partnership between Hamid and Col. Robert H. Morton. Morton actually ran the circus. He was the president of the corporate defendant and all its stock was held or controlled by him. Hamid's defense was that no partnership existed.

As there is ample evidence in the record to sustain the plaintiff's theory that the injuries occurred because of the negligence of the defendants' riggers, the main question before us is whether there was sufficient evidence of Hamid's partnership with Col. Morton to support the jury's verdict against Hamid as a partner. In our judgment a review of the record discloses ample evidence from which the jury could find that Hamid and Morton, in the words of the Uniform Partnership Act, § 6, systematically "carried on as co-owners, a business for profit."

■ In summarizing the proof we include two items of evidence which appellants urge should not have been received, as we find this evidence was properly admitted for reasons we state below. The two disputed items are:

1. A written partnership agreement executed in 1944 between Hamid, Morton and one Barry to carry on the circus business in Canada.

2. A book entitled "Circus" purporting to be the autobiography of defendant Hamid "as told to his son George Hamid, Jr."

The proof was as follows: The route card showing where the circus played in 1952, listed it as the "Hamid-Morton Circus" and gave its address as 10 Rockefeller Plaza, New York, which was then Hamid's office. No "showing dates" could be contracted for unless confirmed by the New York office, for the Altoona date the card noted "(Only

acts confirmed by New York office used)."

In a book copyrighted November 21, 1950, entitled "Circus" which purported to be an autobiography of defendant Hamid "as told to his son George A. Hamid, Jr." a picture shows "The Hamid-Morton Circuit," and there are numerous items referring to Hamid owning and having his own circus and his pride in doing so. Pages 246 and 247 of the book describe in detail how Hamid and Morton went into partnership in the "Hamid-Morton Circus," and states "We shook hands on the deal—no written contracts. I was to put the shows together and he was to handle them on the road."

Sometime before this, in 1944, Hamid had formed a partnership with Robert Morton and one Howard Y. Barry, which, according to Barry's testimony, terminated a few weeks later. But in view of the other evidence it was permissible for the jury to conclude that Hamid and Morton continued as partners. At the trial Hamid admitted the 1944 partnership although he had previously denied it on his deposition. Hamid also conceded that in May 1954 he shared profits with Morton but claimed he was not to share any losses.

While Hamid himself testified and contended that his only relationship with the circus was that of booking agent who furnished the acts, many of the admissions he was forced to make, in his deposition and at the trial, supported the plaintiff's claim of his partnership interest: (1) He autographed and sent to many friends copies of the book "Circus" which purported to be his autobiography; (2) He actively traveled with the circus after Morton's death, doing work Morton used to do, feeling "obligations to his widow, and to contracts which had been committed, and committees called and asked if I would pitch in to help out in this emergency. I neglected a lot of my other business in order to do so, and I did."; (3) Shortly before the trial the program for the circus at Palisades Park stated that it was "Under the personal direction of George A. Hamid, Sr."; (4)

After Morton's death he asked Morton's widow for an accounting; (5) Although on his deposition Hamid had denied ever being in partnership with Morton and one Howard Y. Barry, at the trial he admitted there had been such partnership in 1944 when he was confronted with Barry's testimony and a certificate of the partnership certified by the County Clerk of New York County.

This summary of the evidence bearing on the Hamid-Morton partnership helps to dispose of the two objections to the admission of evidence, which we now consider.

As to (1), the partnership agreement, this was clearly admissible to refute Hamid's testimony on his deposition that he had never been a partner of Morton, and thus impeach his credibility. Lee Dong Sep v. Dulles, 2 Cir., 1955, 220 F. 2d 264; 3 Wigmore, Evidence §§ 1017, 1018 (3rd Ed. 1940). In view of Hamid's admitted connection with this circus for many years, the partnership agreement was admissible in any event as it was evidence of the nature and extent of their relationship, which, when taken with the other evidence, was relevant to the question of their alleged partnership in May 1952.

As to (2), the admission in evidence of the book "Circus," subtitled as the defendant Hamid's autobiography, was proper for two reasons. First, the certificate of copyright registration and the current catalogue of copyright entries both showed George A. Hamid and his son to be the authors of the book "Circus." 17 U.S.C.A. §§ 209 and 210 respectively provide that the certificate and the catalogue "shall be admitted in any court as prima facie evidence of the facts stated therein." There is no reason to limit the use of such evidence. The language of the statute is clear. Even though the registration has been made by the publisher, the circumstances and reasons for the registration are some guarantee that authors are sufficiently safeguarded against the likelihood of inaccurate registration. Having established prima facie the authorship of the book, any statements in it bearing on the issues were relevant as admissions of George A. Hamid. He was free to disclaim the prima facie showing but, as we have pointed out, his cross-examination, far from refuting the records, seems to have confirmed his responsibility for the book and the statements in it which bore on his partnership with Morton in the Hamid-Morton Circus.

The appellant also assigns as error the admission of testimony of the plaintiff's mother to the effect that on May 7, 1952, the day after the plaintiff's fall, she went to the circus to get her daughter's trunk. Over objection she testified that she talked with Morton. She first asked for Mr. Hamid, but was told by Morton that he, Morton, was Hamid's partner, that Hamid was not then in the city, but that he, Morton, would talk to her. She informed Morton that she had come for her daughter's personal belongings and that her daughter had told her she fell because there was no safety loop on her rigging. To this Morton replied that he had personally checked the rigging after the accident and ordered the riggers to put on a safety band at once. Although there is authority to the effect that a statement of an alleged partner may be admitted to show the existence of the partnership if a prima facie showing has been made by other evidence, Pryor v. Hale-Halsell Grocery Co., Inc., 10 Cir., 1936, 80 F.2d 995, 997; Katz Exclusive Millinery v. Reichman, D.C.W.D.Mo.1953, 14 F.R.D. 37, it is not necessary for us to pass on that question in this case. Here the joint activity over a long period of time, the sharing of profits, the partnership certificate filed in 1944, the use of the name Hamid-Morton Circus, the admissions in the book, clearly pointed to the existence of the partnership and any error, if it was error, resulting from the admission of Mrs. Anderson's testimony was harmless.

Hamid's personal liability does not depend upon an express agreement to share losses as Hamid earnestly contends. For the agreement to share loss-

es may be inferred where all of the other elements of a partnership are present. Mill Factors' Corp. v. Margolies, 210 App.Div. 739, 206 N.Y.S. 434, 437, for 'history after remand see 219 App.Div. 783, 220 N.Y.S. 888, appeal dismissed 245 N.Y. 602, 157 N.E. 875. See 68 C. J.S. Partnership § 29, p. 449.

 Moreover, the district judge properly charged the jury on the theory that Hamid might be found liable as a joint adventurer as well as on the partnership theory. The basis and scope of the liability of a joint adventurer in this situation is indistinguishable from that of a partner. However, under the law of New York it is clear that a joint adventure may exist without a sharing of losses. Mariani v. Summers, 3 Misc.2d 534, 52 N.Y.S.2d 750, 755, affirmed First Dept., 269 App.Div. 840, 56 N.Y.S.2d 537; Usdan v. Rosenblatt, Sup., 93 N.Y. S.2d 862.

Thus, whether the verdict was based on a partnership or a joint adventure theory, the absence of an express agreement to share losses is not fatal.

 Appellants also claim the district judge erred in denying their motion to amend the answer, made at the end of plaintiff's case, to set up § 203 of the Pennsylvania Workmen's Compensation Act[1] as a defense. This was an affirmative defense and could not be availed of under a general denial. Rule 8(c), Federal Rules of Civil Procedure, 28 U.S. C.A. The motion was not made until eight days after the trial had started. The answer had been filed for over three years. All the pre-trial examinations had been taken and the plaintiff had closed her case, resting it on a theory of common law negligence, before the defendant brought up this new matter. Judge Bruchhausen in a proper exercise of his discretion denied the motion as coming too late. Rule 15(a), Federal

Rules of Civil Procedure, 28 U.S.C.A.; Schick v. Finch, D.C.S.D.N.Y.1944, 8 F. R.D. 639. The appellant also argues that the District Court should have taken judicial notice of the Pennsylvania Workmen's Compensation Act under § 344–a of the New York Civil Practice Act. Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Section 344–a expressly gives the trial court discretionary power and we see no abuse of discretion in refusing to take notice of the Pennsylvania Act when it was not pleaded and when the judge properly denied the motion to amend the pleadings under the circumstances we have set forth above.

The other claims of error are so patently without merit that they do not warrant discussion.

Judgment affirmed.

[1] "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe." 77 P.S.Pa. § 52.