442 F.Supp. 527 (1978)
BANK OF ST. LOUIS, Plaintiff,
v.
John J. MORRISSEY et al., Defendants and Third-Party Plaintiffs,
v.
Henry A. LONGMEYER, Third-Party Defendant and Additional Defendant on Counterclaim.
Nos. 76-484C(3) to 76-487C(3).
United States District Court, E. D. Missouri, E. D.
January 6, 1978.
As Amended March 13, 1978.
*528 Burton H. Shostak, St. Louis, Mo., for plaintiff.
Arthur L. Smith and Karen Holm, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendants and third-party plaintiffs.
Robert S. Allen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Henry A. Longmeyer.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Bank of St. Louis brought four separate actions pursuant to 28 U.S.C. § 1332 seeking to recover sums allegedly due on promissory notes. Defendants Morrissey, as assignee of the EFG Cattle Company, and Appel, counterclaimed against plaintiff Bank and Longmeyer. These counterclaims allege that Longmeyer is liable to Morrissey and Appel for certain losses sustained in cattle feeding operations, and that the Bank is also liable because it was engaged in a joint venture with Longmeyer. In addition, each of the four named defendants filed third-party complaints against Longmeyer, claiming a right to indemnification on the promissory notes. Defendants Morrissey, as assignee of the EFG Cattle Company, and Appel additionally contend in the third-party complaint, that Longmeyer is liable to them for the losses sustained in the cattle feeding operations. These causes were consolidated by order of this Court dated November 10, 1976.
*529 This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1. Plaintiff Bank of St. Louis is a banking corporation chartered under the laws of the state of Missouri. Defendants John J. Morrissey, Edwin Appel, John Sullivan and Albert Stern are citizens of the state of New York. Henry Longmeyer, third-party defendant and additional defendant on the counterclaim, is a citizen of the state of Illinois.
2. In 1968, EFG Cattle Company ["EFG"] was formed by the New York accounting firm of Oppenheim, Appel, Dixon & Co. The purpose of EFG was to provide clients of the accounting firm, who chose to participate, with a means of deferring income from one year to the next through a cattle feeding operation. The participating clients were able to deduct the expenses of buying and feeding the cattle in one year, and report the realization of income from the sale of the cattle in the next year. EFG was originally formed as a joint venture but allegedly operated as a limited partnership during the years 1972-1973, and 1973-1974. Defendant Appel was involved in his own cattle feeding operation. These operations were profitable in 1970-1971, 1971-1972, and 1972-1973. Substantial losses were incurred, however, in 1973-1974.
3. Steven Oppenheim, a partner in Oppenheim, Appel, Dixon & Co. became involved in the affairs of EFG beginning in 1968. He engaged the cattle managers and feed lot operators who actually purchased and fed the cattle for EFG.
4. In 1969, Henry Longmeyer was contacted by defendant Morrissey in connection with EFG. Morrissey arranged for Longmeyer to come to New York to meet with Oppenheim. In 1970, Longmeyer met with Oppenheim and Morrissey in New York and in Chicago to discuss managing the program for EFG in 1970-1971. From the credible evidence adduced at trial, the Court finds that the agreement reached, which was never reduced to writing, was that Longmeyer would be paid $5.00 per head; that Longmeyer would pay Morrissey a finder's fee of $1.00 per head; that EFG would bear the first $10.00 per head loss, later changed to the first $15.00 per head loss; and that EFG and Longmeyer would split the profits on an equal basis. No agreement was reached with respect to a division of losses in excess of $15.00 per head. Morrissey and Oppenheim maintain that Longmeyer was to bear all losses in excess of $15.00 per head while Longmeyer insists that the parties agreed to divide losses equally. Longmeyer was also involved in the Appel cattle feeding program. The testimony established that the agreement with Appel was the same as the agreement with EFG. Defendants Morrissey and Appel contend that certain evidence supports their testimony that the parties agreed that Longmeyer would assume all losses in excess of $15.00 per head. They refer to past dealings by EFG with its prior cattle managers, in which the cattle managers agreed to accept all losses over a certain amount. Defendants also point to the fact that during the summer of 1973, Morrissey prepared a number of drafts of written management agreements between EFG and Longmeyer, all of which incorporated a stop-loss provision. None of these drafts, however, were ever presented to, or signed by, Longmeyer. Defendant Morrissey testified that in the summer of 1974, he asked Longmeyer to sign a management agreement and that Longmeyer, while refusing to sign, stated that he would live up to the terms of the agreement. The Court does not find this testimony to be credible. Defendants also point to the fact that Longmeyer testified that his agreements with John Hood & Co., Twinbrook Farms, and Appel, other cattle feeding programs, were the same as his agreement with EFG, and *530 that plaintiff Bank had copies of written management agreements involving these programs which contained stop-loss provisions. The Twinbrook Farms and Appel agreements, however, are unsigned. There is no evidence that Longmeyer knew of the existence of these agreements, or of the stop-loss provisions, nor is there any evidence that Longmeyer consented to a stop-loss provision. There is a signed management agreement between Longmeyer and John Hood & Co. which does contain a stop-loss provision. The testimony with reference to this agreement, however, negates the inference that Longmeyer entered into similar agreements with other cattle feeding operations. In the summer of 1974, after it was clear that the 1973-1974 cattle feeding operations would suffer substantial losses, Thomas Casperi, assistant vice president and loan officer of plaintiff Bank, received a call from Oppenheim stating that Hood, who had not yet signed his loan papers, was refusing to do so unless Longmeyer agreed to indemnify Hood as to the losses. Casperi asked Longmeyer to sign the same because of the Bank's embarrassment in having loaned funds without a signed loan agreement. Longmeyer, a director of plaintiff Bank, accordingly signed the agreement and Hood later signed the same and the loan papers. Defendants also point out that Oppenheim frequently stated that EFG had a stop-loss agreement with Longmeyer. The Court finds this to be of little value in determining the actual agreement between the parties. It was obviously advantageous to EFG that such a provision exist. Oppenheim never mentioned such a provision to Longmeyer until the losses became obvious and when a stop-loss provision was first mentioned to Longmeyer, Longmeyer protested that such was not the agreement. Accordingly, the Court concludes that the parties failed to reach an agreement with respect to a division of the losses in excess of $15.00 per head.
5. Longmeyer was paid approximately half of his $5.00 per head fee when the annual program began in December, and the balance at the end of the program, usually in the fall of the following year. At the time that Longmeyer received final payment, he would pay Morrissey the $1.00 per head finder's fee. The testimony adduced that Longmeyer was to pay Morrissey the $1.00 per head finder's fee only for the first year of operation. Nevertheless, Longmeyer continued to pay the finder's fee each year of operation except for the 1973-1974 program when Longmeyer never received final payment. After the first year of operation, Longmeyer received only $4.00 per head of cattle as a management fee. This fee was unilaterally lowered without objection from Longmeyer.
6. In 1971-1972, EFG began borrowing funds for its operations from the Valley National Bank of Phoenix and from plaintiff Bank. Longmeyer was at that time, and still is, a director of the Bank of St. Louis. Because Oppenheim was dissatisfied with the terms of the Valley National loan, the entire cattle loan for that year was taken over by the plaintiff Bank. In 1972, all funds were borrowed from plaintiff Bank. These loans were non-recourse notes; the Bank looked only to its security in the cattle in the event that the notes were not paid in full. In 1972, however, Lloyd Boas, a director of plaintiff Bank, raised questions about the propriety of this procedure. Accordingly, plaintiff Bank insisted that the cattle loan for the 1973-1974 program be with recourse. In addition to the loan made to EFG, plaintiff Bank made loans to the four individual defendants herein. Morrissey and Appel were each loaned, and each signed promissory notes in the amount of $15,000.00. Sullivan and Stern were each loaned, and each signed notes in the amount of $100,000.00. Each note specifies that it is with recourse against the individual and the credible testimony establishes that the parties fully understood that the notes were with recourse. The notes provide for recovery of attorney fees; such recovery, however, was waived by stipulation of the parties. The notes were payable on demand, and if no demand were made, on December 13, 1974, at the interest rate of 8% per annum after maturity or demand. Defendants Morrissey, *531 Sullivan and Stern have not paid any of the amounts owing on the loans. The amount still owing on the Appel loan is $8,852.63.
7. Substantial sums were owing on the 1973-1974 loans to EFG, the Appel program, and Twinbrook Farms. The total sums owing from these three operations were $424,771.21. The Bank officers were concerned about these outstanding balances and the possible reactions of the bank examiners to the same. They requested Longmeyer to pay the sums and he did so.
8. The evidence fails to establish that Longmeyer agreed to indemnify defendants Morrissey, Appel, Stern and Sullivan in connection with the payment of their promissory notes. The evidence also fails to establish that Longmeyer was engaged in a joint venture with plaintiff Bank. There was no agreement between Longmeyer and the Bank with reference to the EFG and Appel loans. The parties did not agree to a division of profits and losses and did not, in fact, share profits and losses. The evidence does establish that Longmeyer was engaged in a joint venture with EFG and with Appel in connection with the cattle feeding operations.
9. Oppenheim is a partner in a large New York accounting firm. Morrissey is an attorney practicing in New York and specializing in tax work. Both men are sophisticated business people and clearly experienced in their fields. The testimony of these two professionals and the evidence in general convinces this Court that both were careless and haphazard in handling the matters involved in this litigation. Defendants refer this Court to the "silent evidence of logic" in support of their argument. "Logic" truly fades away when the Court examines the Oppenheim and Morrissey actions in the matters litigated in this proceeding.
10. The parties have stipulated that in 1973-1974, EFG purchased 10,960 head of cattle and suffered a net operating loss of $1,436,301.24. In addition, interest paid to the Bank and the management fee payable to Longmeyer were considered to be costs in computing profits, and accordingly, losses. The Bank was paid $213,000.54 in interest and the management fee was $43,840.00. Longmeyer was paid only $20,000.00 of his management fee. Longmeyer himself paid the Bank principal in the amount of $373,725.67 and interest in the amount of $1,828.00 on the EFG cattle loan.
11. The parties have also stipulated that in 1973-1974, the Appel program purchased 183 head of cattle and suffered a net loss of $31,021.85. Interest on the cattle loan amounted to $4,288.96 and Longmeyer's management fee was $732.00. None of the management fee was paid to Longmeyer. Longmeyer himself paid the Bank principal of $24,654.60 and interest of $1,109.68 on the Appel cattle loan.
12. Although contending that EFG was a limited partnership, after the institution of suit, it was noted that a limited partnership agreement had never been signed. Accordingly, on the eve of trial, defendant Morrissey obtained an assignment of claims from the participants of EFG. These assignments state that the individuals are all partners of EFG and that the individuals assign to Morrissey:
certain claims, demands, rights and causes of action against Bank of St. Louis, a Missouri corporation, and Henry A. Longmeyer, of the State of Illinois, or either of them arising from oral agreements for the buying, feeding, and sale of cattle, and for the indemnification of Assignor for any losses in connection therewith, more fully described in the pleadings in the case known as Bank of St. Louis v. John J. Morrissey, Civil Action No. 76-484C(4), now pending in the United States District Court for the Eastern District of Missouri, Eastern Division.
Assignor gives to Assignee, his executors, administrators, and assigns, the full power and authority, for Assignor's use and benefit, to ask, demand, collect, receive, compound, and give aquittance [sic] for the aforesaid claims, demands, rights and causes of action, or any part thereof, and in Assignor's name or otherwise, to prosecute, withdraw, compromise or settle any suits or proceedings at law or in equity therefor. Assignee shall hold any sums received pursuant to this Assignment for *532 the use and benefit of Assignor and shall account to Assignor therefor; provided that Assignee shall deduct from sums so received, prior to any distribution thereof to Assignor, all sums that Assignee may be compelled to pay or expend for the taxable costs, disbursements, or allowances necessarily incurred in the prosecution or collection of any claim, demand, right, or cause of action under the agreements hereinabove described, or any such sums incurred for the purpose of enforcing or collecting the claims.

CONCLUSIONS OF LAW
This Court has jurisdiction of the subject matter and the parties in accordance with 28 U.S.C. § 1332.
Longmeyer has raised the issue of defendant Morrissey's capacity to assert claims on behalf of EFG. It is clear that a limited partnership was never formed; the limited partnership agreement was not signed, recorded or published. Morrissey contends that upon the failure to form a limited partnership, the participants in EFG became partners in a general partnership. See Peerless Mills, Inc. v. American Telephone and Telegraph Company, 527 F.2d 445 (2d Cir. 1975). While no partnership agreement was presented to the Court, the assignments from the participants each state that the participant is a partner. Absent any evidence to the contrary, the Court concludes that EFG was a general partnership. It is sufficient for the purposes of Rule 17, Federal Rules of Civil Procedure, that an assignment of claims occur after filing so long as the assignment is made before trial. Dubuque Stone Products Co. v. Fred L. Gray Company, 356 F.2d 718 (8th Cir. 1966). The Court concludes that the assignment is sufficient to permit defendant Morrissey to assert the claims of EFG. Petrikin v. Chicago, R.I. & P.R. Co., 15 F.R.D. 346 (W.D.Mo.1954).
The Court has found that the promissory notes were with recourse against the individual defendants, and that the parties were aware of the same. The Court has further found that Longmeyer did not agree to indemnify the individual defendants against obligations arising from the notes. Accordingly, the Court concludes that plaintiff must recover the sums owing on the promissory notes and that defendants are not entitled to indemnification from Longmeyer.
Defendants Morrissey and Appel contend by way of counterclaim that plaintiff Bank and Longmeyer were engaged in a joint venture "for the purpose of soliciting, inducing and causing persons to invest in cattle buying and feeding operations".
A joint venture is defined as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge . . . it is generally recognized that a joint venture may be implied without any showing of a specific or formal agreement. Allison v. Dilsaver, 387 S.W.2d 206, 210 (Mo. App.1965).
See also Dubuque Stone Products Co. v. Fred L. Gray Company, supra; Wood v. Western Beef Factory, Inc., 378 F.2d 96 (10th Cir. 1967); Parks v. Riverside Insurance Company of America, 308 F.2d 175 (10th Cir. 1962). The Court has found that the evidence failed to establish the existence of a joint venture between Longmeyer and plaintiff Bank. Since these counterclaims are premised upon the existence of a joint venture, defendants Morrissey and Appel can not prevail.
By third-party complaints, defendants Morrissey and Appel sought not only indemnification, but also recovery of the substantial losses incurred by the EFG and Appel cattle feeding operations. Morrissey and Appel each assert the existence of an agreement whereby Longmeyer would absorb all losses in excess of $15.00 per head of cattle and seek to recover said losses. The Court has found that no agreement was reached as to the division of losses. From the evidence adduced, the Court concludes that New York law should govern the question of the joint venture and further concludes that Longmeyer was engaged *533 in joint ventures with EFG and Appel in connection with the cattle feeding programs. Anderson v. National Producing Co., 253 F.2d 834 (2d Cir. 1958), cert. denied, 357 U.S. 906, 78 S.Ct. 1151, 2 L.Ed.2d 1157 (1958). Under these circumstances, the Court concludes that the parties are to share the losses equally. Riley v. Maran, 82 Misc.2d 702, 370 N.Y.S.2d 302 (Sup.Ct. 1974); cf., Dubuque Stone Products Co. v. Fred L. Gray Company, supra; 46 Am.Jur.2d Joint Ventures § 47.
Longmeyer contends that Morrissey and Appel have each pleaded the existence of an agreement and, failing to establish an agreement, can not recover at all. Here, however, Longmeyer himself testified that he understood the agreement to be that he would share equally in all losses in excess of $15.00 per head. Accordingly, the Court concludes that defendants Morrissey and Appel are not precluded by virtue of their assertion of an oral contract. See Polen v. Kansas City Chip Steak Company, 404 S.W.2d 416 (Mo.App.1966).
EFG suffered a total loss of $1,693,141.78. The loss in excess of $15.00 per head of cattle was $1,528,741.78. The Court has concluded that Longmeyer is liable for half of that loss, or $764,370.89. Allowing credit for payment by Longmeyer to plaintiff Bank in the amount of $375,553.67 on behalf of EFG, and $23,840.00 still owing on the management fee, Longmeyer remains liable to Morrissey as assignee of EFG in the amount of $364,977.22.
Appel's program suffered a total loss of $36,042.81. The amount of loss in excess of $15.00 per head was $33,297.81. Longmeyer is liable for half, or $16,648.91. Longmeyer paid a total of $25,764.28 to plaintiff Bank on behalf of the Appel program and is owed $732.00 for the management fee. Thus, Longmeyer is entitled to credit in the amount of $26,496.28. Since this amount exceeds Longmeyer's liability to the Appel program, Appel is not entitled to recover herein.
After trial, defendant Morrissey moved to amend the pleadings to conform to the evidence adduced at trial, and include a claim for the $1.00 per head finder's fee for the cattle purchased for the 1973-1974 program. Leave was granted. The Court has found that Longmeyer was not obligated to pay the same until he received payment of his management fee in full; such payment was never made. Additionally, the Court has found that, although Longmeyer continued to pay the $1.00 per head finder's fee, the parties had agreed only that the fee would be paid during the first year of operation. Accordingly, the Court concludes that Morrissey is not entitled to recover the finder's fee herein.
Plaintiff is entitled to recover from defendants on the promissory notes together with the interest therein specified. Defendant Morrissey, as assignee of EFG, is entitled to recover $364,977.22 from Longmeyer. Longmeyer is entitled to judgment on all other claims against him and plaintiff Bank is entitled to judgment on the counterclaims filed against it. Appropriate orders will issue.