GEORGE W. HAXTON & SON, INC., et al., Appellants, *v.* HARRY RICH et al., Respondents. (Action No. 1.)

E. RUSSELL BOWKER, Respondent, *v.* GEORGE W. HAXTON & SON, INC., Appellant. (Action No. 2.)

Third Department, March 8, 1944.

*Donald W. Yager* (*Charles H. Gardner* of counsel), for appellants.

*Levi R. Chase* for respondents.

BREWSTER, J. Action No. 1 is in replevin for 9,500 pounds of red kidney beans. It was begun in the County Court of Cortland County. Action No. 2 is for the recovery of damages for the conversion of said beans. Thereafter by order Action No. 1 was removed from the County Court to the Supreme Court and consolidated with Action No. 2. They were tried by the court, without a jury. Separate decisions and judgments were made and entered. In Action No. 1 the complaint was dismissed with costs to defendant Bowker as against the plaintiff George W. Haxton & Son, Inc. In Action No. 2 plaintiff Bowker was awarded judgment for $569.74.

The cases were presented for and decided upon an informally phrased and irregularly arranged stipulated statement of facts

which seems to have been formed in large part by some intentionally recorded conversation between counsel and between the court and counsel.

Plaintiffs-appellants in the replevin action ground their claim to both the title and right to possession of the subject matter upon a certain written contract made by them with defendant Harry Rich on June 9, 1941. In substance that provided: (1) The Haxton company (one of the plaintiffs later referred to as Haxton) was to furnish said Rich with 960 pounds of red kidney seed beans of the agreed value of $105.60 to enable him as " grower to plant, cultivate and harvest 16 acres of beans " on the farm occupied by him; (2) Haxton expressly absolved itself from all guarantee as to the kind or " quality productiveness " of the seed and any responsibility " for the crop "; (3) Rich agreed to plant, cultivate and harvest the crop wholly at his own expense, but, it was stated: " This contract is intended by the parties hereto to vest the said company, their successors or assigns, with absolute title in the seed and the crop therefrom, as soon as the same shall have potential existence, and that the title shall remain with the said company, their successors or assigns throughout, but that the risk of loss in seed and crop shall be on the grower until delivery to the company "; (4) the harvested crop was to be delivered by Rich to Haxton, at latter's election, on or before March 1, 1942, and thereupon Haxton would pay Rich therefor at a price " to be determined by the paying price of said company on any day it elects to accept delivery * * * less the agreed valuation of the said seed, with interest thereon to the date of delivery "; (5) for (a) all existing or future indebtedness owing from Rich to Haxton and (b) all existing indebtedness owing from Rich to Haxton's agent (the coplaintiff, Hewitt Bros., Inc.) there was to be a *lien* on Rich's interest in the crop and its proceeds and the aggregate amount was to be deducted therefrom; (6) payment by Rich for the seed beans and all other indebtedness to Haxton, it was stated, " will not invalidate this contract." At the date of the contract Rich owed Hewitt $459.86 on open account and to evidence his indebtedness to Haxton for the seed beans Rich gave them his demand promissory note.

Following the making of this contract Rich planted the sixteen acres of beans and shortly thereafter gave a chattel mortgage upon same to E. Russell Bowker (defendant in Action No. 1, plaintiff in Action No. 2). This was for a loan of $460 payable three months from date with interest. Bowker duly filed this on June 26, 1941, and the contract aforesaid between

Haxton and Rich was filed subsequently on July 30, 1941. That Bowker had no knowledge, actual or constructive, of the said contract is stipulated.

Rich wholly defaulted in the payment of the sum secured by the chattel mortgage at which time the crop harvested from the sixteen acres of beans was in his possession. Thus upon the default Bowker had the title to and the right to the possession of the crop, unless because of the contract first referred to, Rich was precluded from passing title by the chattel mortgage he gave. Insofar as such contract was effectual to create a lien upon the crop in favor of either Haxton or Hewitt it was unavailing as against the chattel mortgage because subsequently filed and Bowker had no actual notice of it. Appellants here are claiming naught for the contract save that it is one of joint adventure. I perceive in it none of the essential elements of such an enterprise. On the contrary its provisions seem deftly to exclude them expressly. There was a careful avoidance of any sharing of a loss as to Haxton or a division of profits as to Rich. Haxton advanced the seed beans for which at any and all events Rich was to pay the agreed value. Rich for his labor, land and enterprise would receive only such price as was Haxton's '' paying price '' when they elected at any time up to March 1, 1942, to accept delivery. The chief aim and effect of the contract seem to have been to assure to Haxton the certainty of buying the crop of beans at its own price provided a crop was grown and harvested from the seed it sold to Rich. The latter's participation in the '' adventure '' only extended to him credit on the sale of the seed and afforded him a sole market for the sale of the crop at a price to be determined by the buyer. Absent from this is any joinder of interest essential to a joint venture. The enterprise remained individual as to each. However diversified in form and as to subject matter a contract of joint adventure may be, the feature of partnership is a fundamental concept. Rules of law governing partnerships, if relevant, apply to a '' joint adventure '' which in this State has also been termed a '' limited copartnership.'' (*Hubbell* v. *Buhler,* 43 Hun 82, 84; *Ross* v. *Willett,* 76 Hun 211, 213; *Marston* v. *Gould,* 69 N. Y. 220, 225; *Wilcox* v. *Pratt,* 125 N. Y. 688; *Spier* v. *Hyde,* 92 App. Div. 467, 472; *Lobsitz* v. *Lissberger Co.,* 168 App. Div. 840; *Brown* v. *Leach,* 189 App. Div. 158, 163.) In testing for the existence of the relationship itself some sharing of profits or other gain in the achievement of the venture and some apportionment of the risks involved must be found. (*Columbian Laundry* v. *Hencken,* 203 App. Div. 140, 143, and cases there cited.)

The provisions in the contract between Haxton and Rich as to the " intention " to vest in the former an " absolute title in the seed and the crop therefrom " could in any view at most but constitute a contract to sell future goods. (Personal Property Law, § 86, subd. 3.) Thus no title passed as against the subsequent chattel mortgagee.

Plaintiff's proofs in the replevin action having failed to establish the title alleged or right to possession of the subject matter, and therein the defendant in Action No. 2 having secured possession and disposed of same it follows it was liable in conversion.

The judgments appealed from should be affirmed, with costs as in one action.

HILL, P. J., BLISS, HEFFERNAN and SCHENCK, JJ., concur.

Judgments affirmed, with costs as in one action, and disbursements.