**BACKUS PLYWOOD CORPORATION,**
Plaintiff,

v.

**COMMERCIAL DECAL, INC. and Alfred Duhrssen, Defendants.**

United States District Court
S. D. New York.
Sept. 19, 1962.

Krause, Hirsch, Gross & Heilpern, New York City, for plaintiff.

M. S. & I. S. Isaacs, New York City, for defendants.

EDELSTEIN, District Judge.

This is a motion for partial summary judgment brought by defendants pursuant to Rule 56(b) and (c), Fed.R.Civ.P. 28 U.S.C.A. For the purposes of this motion the following are the relevant facts.

Defendant corporation (Decal) is in the business of manufacturing decalcomanias for the transferring of designs to ceramic and plastic dishes and glassware. The individual defendant, Alfred Duhrssen, is the president of the corporation and the owner of a substantial amount of stock. In the early part of August, 1958, Duhrssen engaged one Jack Yarmove to act as agent and broker for the sale of the assets and business of the corporate defendant. Yarmove introduced Duhrssen to Alfred H. Sachs, secretary-treasurer of the plaintiff. Sachs allegedly proposed that the parties join together for the purpose of mutually profiting from a reorganization of the corporate defendant. Memoranda containing proposals and counter proposals were submitted by both sides, but no agreement was ever reduced to a writing. Plaintiff does not urge that a written agreement existed, but claims that the negotiations did produce an enforceable oral agreement which it characterizes as a "joint venture agreement." [1]

1. The complaint alleges as follows:
"9. On or about September 24, 1958, plaintiff and defendants entered into a joint venture agreement.

"10. Among the purposes of the said joint venture were the following:
"(a) The plaintiff and defendants would, as joint venturers, conduct and

Briefly stated, the purpose of this alleged agreement was to form a new corporation which would acquire certain assets from Decal, continue its business, lease its buildings and improvements, and employ Duhrssen as president and general manager at a fixed salary plus a share of the profits. The agreement was to be reduced to writing within a month from September 24, 1958, the day upon which the terms of the venture were supposedly agreed upon.

More specifically, the alleged agreement contains certain tax and business advantages supposedly designed to benefit all parties. A new corporation using the name of the defendant corporation, Commercial Decal, Inc., was to be organized, with its stock held exclusively by the plaintiff. Duhrssen was to become president and general manager of the new corporation, receiving a salary and a share of the net profits. Sachs was to become treasurer and financial executive of the new corporation. Decal (whose name was to be changed) was to continue to own the real estate, as well as all cash and receivables on its books. The merchandise inventory, machinery and equipment of Decal, having a value of approximately $900,000, was to be transferred to the new corporation for about $300,000, the sum to be furnished by plaintiff. Furthermore, all the tools, dies, decalcomanias, etchings, engravings, forms, systems, customer lists and unfilled orders were to be transferred to the new corporation without compensation. A lease agreement was to be entered into with Decal whereby the new corporation was to pay all the real estate taxes in addition to the rent for the premises.

The transfer of this merchandise and machinery would have resulted in an apparent loss of $600,000 for Decal. In collecting the rents from the new corporate entity, Decal would have had a substantial annual income for at least the first five-year period, which income would have been offset by the loss. Thus, Decal would have been able to accumulate at least the equivalent of a $600,000 loss within a five-year period without any obligation to pay tax thereon. For the new corporation, the rent and real estate taxes which were to be paid by it would have been a deductible business expense in its operating statement. The new corporation would have had a taxable income in the amount it would have received through the sale of the merchandise acquired from Decal over and

reorganize the business then being conducted by defendant Decal, and in such transaction act as fiduciaries for each other and for each other's benefit.

"(b) Backus would cause Commercial to be incorporated under the laws of the State of Delaware as a wholly-owned subsidiary of Backus.

"(c) Commercial, as the vehicle of the joint venture, would purchase from defendant Decal and Decal would sell to Commercial all of the furniture, fixtures, machinery, inventory and good will of Decal for one-third ($\frac{1}{3}$) of its depreciated book value of approximately $922,-000 as of September 30, 1958, and would pay therefor on that date the sum of $300,000; not later than ninety (90) days thereafter, an accountant's statement would be submitted by defendant Decal as to the amount actually due for said assets and that any refunds or additional payments found to be due would be paid within thirty (30) days after the submission of said report.

"(d) Defendant Decal, as Landlord, would lease to Commercial, as Tenant, all of the buildings, leasehold improvements and land owned and used by said defendant; the rental would be at the rate of $7,750 per month; in addition, the Tenant would pay all real estate taxes, insurance premiums and the cost of maintenance and repair of the properties; if defendant Decal failed to make payment on its first mortgage covering the leased premises, the Tenant would have the right to make the payment and deduct the amount thereof from the rental payment.

"(e) Backus would guarantee performance of said lease to an extent not exceeding one year's rent, tax and insurance premiums.

"(f) Defendant Duhrssen would spend his full time functioning as President and General Manager of Commercial, and would be compensated by the payment of a fixed salary of $2,000 per month and a share of the net profits."

above the $300,000 cost of the merchandise.

When the alleged arrangements failed to materialize, plaintiff filed suit. The complaint alleges, as a first cause of action, that both defendants entered into a joint venture agreement with the plaintiff on September 24, 1958, for the operation of Decal's business, which agreement they breached by failing to turn over the business. As a second cause of action, plaintiff alleges that Duhrssen agreed to procure the consent of Decal's stockholders and directors to the joint venture agreement, but failed to do so. The third cause of action, which is not the subject of this motion, deals with certain alleged representations made by Duhrssen as to the extent of his control over Decal. Defendants deny the existence of any binding agreement, contending that the parties never proceeded beyond the negotiating stage. Additionally, defendants have pleaded an affirmative defense based upon the statute of frauds.

Defendants now move for summary judgment on the first and second causes of action, claiming that there is no genuine issue as to any material fact. The third cause of action concededly presents a factual issue and is not the subject of this motion. Defendants contend that under any version of the facts put forward by plaintiff, no joint venture agreement came into existence and that if an agreement did exist, it is void and unenforceable under the statute of frauds.

Accepting, for purposes of this motion, plaintiff's version of the facts, defendants urge that the agreement set forth is not one of "joint venture." It is defendants' position that the facts do not establish two of the essential elements necessary to constitute a joint venture, i. e., the sharing of profits and losses and joint control. Upon the oral argument, the court raised the question of whether, assuming the sharing of profits and losses to be a necessary element, the kind of agreement here alleged lacks that element. Put another way, the question was whether profit and loss may be construed more broadly than the usual accounting definition so as to include the kind of risks which plaintiff contends are present in the case at bar. Supplemental memoranda were received from the parties on this question. Plaintiff contends that the sharing of losses and joint control over the property of the venture are not necessary in order to constitute an arrangement a joint venture. In the alternative, plaintiff argues that if the elements are necessary, both are present in the arrangement herein.

■ "A joint venture or enterprise is, in essence, an informal partnership between two or more persons for a limited undertaking or purpose." Wooten v. Marshall, 153 F.Supp. 759, 763 (S.D. N.Y.1957); Leitner v. Wass, 63 N.Y.S. 2d 350, 352 (S.Ct.1946). But it is at best a nebulous concept whose boundaries are not precisely drawn. Defining a joint venture is easier than identifying it, for each case depends upon its own facts.

"Joint ownership by itself is not sufficient to create a joint venture, Bowmaster v. Carroll, 8 Cir., 1928, 23 F.2d 825, nor is a mere community of interest, Hasday v. Barocas, Sup.1952, 115 N.Y.S.2d 209. Many factors are taken into consideration by the courts in determining whether the relationship exists. To begin with, it is a voluntary relationship, the origin of which is wholly *ex contractu*, i. e., it is not a status created by law. An agreement between the parties to create a joint venture is essential and whether or not a joint venture exists depends entirely upon the intention of the parties, either express or implied. As a general rule joint ventures are thought of in relation to a specific venture, a single undertaking, although the undertaking need not be one susceptible of immediate accomplishment. It is in the nature of a partnership limited to a particular venture, not general in operation or duration. It has been variously defined as an association

to carry out a single business enterprise for profit; a common enterprise for mutual benefit; a combination of property, efforts, skill and judgment in a common undertaking. Joint control and management of the property and authority to act each for the other are usual characteristics along with the incurring of joint obligations and the enjoyment of joint rights. An agreement to share joint profits is essential to the creation of a joint venture. The profit accruing must be joint and not several; each must have an equitable interest in the profits themselves. But such an agreement in and of itself is not determinative. The joint sharing of losses is also commonly regarded as essential. Bowmaster v. Carroll, supra; Chapman v. Dwyer, 2 Cir., 1930, 40 F.2d 468; Chisholm v. Gilmer, 4 Cir., 1936, 81 F.2d 120, affirmed 1936, 299 U.S. 99, 57 S.Ct. 65, 81 L.Ed. 63, rehearing denied 1936, 299 U.S. 623, 57 S.Ct. 229, 81 L.Ed. 458; First Mechanics Bank of Trenton v. Commissioner, 3 Cir., 1937, 91 F.2d 275; Tompkins v. Commissioner, 4 Cir., 1938, 97 F.2d 396; Detachable Bit Co. v. Timken Roller Bearing Co., 6 Cir., 1943, 133 F.2d 632; Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co., 10 Cir., 1954, 209 F.2d 917; Potter v. Florida Motor Lines, D.C. S.D.Fla.1932, 57 F.2d 313; United States Fidelity & Guaranty Co. for Use of Reedy v. American Surety Co., D.C.M.D.Penn.1938, 25 F.Supp. 280."

United States v. Standard Oil Co. of Cal., 155 F.Supp. 121, 148 (S.D.N.Y. 1957), aff'd, 270 F.2d 50 (2d Cir. 1959); see Wagner v. Derecktor, 306 N.Y. 386, 390, 118 N.E.2d 570, 572 (1954); 2 Williston, Contracts § 318A (3d ed. 1959); Nichols, Joint Ventures, 36 Va.L.Rev. 425 (1950); Taubman, What Constitutes a Joint Venture, 41 Cornell L.Q. 640 (1956).

■ An overall view of the cases makes it clear that the elements of loss sharing and joint control over the property of the venture are necessary to constitute an arrangement a joint venture. Plaintiff's contentions to the contrary are without merit. Plaintiff cites no persuasive authority for the proposition that the element of joint control may be absent from a joint venture. The statement cited in 48 C.J.S. Joint Adventures § 2a, p. 810 is preceded by the words "In some jurisdictions" and is not supported by any New York cases. Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1 (1928) and Brady v. Erlanger, 165 App.Div. 29, 149 N.Y.S. 929 (1st Dept. 1914), also cited by plaintiff, do not support its argument. Similarly, the citations relied upon to show that a sharing of losses is not essential are not persuasive. Usdan v. Rosenblatt, 93 N.Y.S.2d 862 (S.Ct.1949), cited by plaintiff as controlling, relies for this point on Mariani v. Summers, 3 Misc.2d 534, 52 N.Y.S.2d 750, 755 (S.Ct.1944), aff'd 269 App.Div. 840, 56 N.Y.S.2d 537 (1st Dept. 1945). In Mariani, the court stated that an agreement to share losses was not indispensably essential, but since a joint venture is a matter of contract, loss sharing will be implied in the absence of an express agreement. See George W. Haxton & Son v. Rich, 267 App.Div. 492, 47 N.Y.S.2d 501 (3d Dept. 1944); Jasper v. Bernstein, 259 App.Div. 638, 20 N.Y.S.2d 362 (1st Dept. 1940). Thus, it is clear that a joint venture, like a partnership, involves some aspect of risk sharing by the participants, although the nature of the losses to be shared is not precisely defined by the authorities. See 2 Williston, op. cit. supra at 575–76.

■ In the alternative plaintiff urges that the elements of joint control and loss sharing are present in this arrangement. The argument is to the effect that joint control is established since Duhrssen was to be president and general manager of the new corporation in addition to retaining his position as president and general manager of the corporate defendant. Alfred H. Sachs, secretary-treasurer of plaintiff, was to become treasurer and chief financial officer

of the new corporation. Thus, Duhrssen and Sachs would jointly control the new corporation. Moreover, argues plaintiff, the new corporation was to employ the same officers and employees as were employed by the corporate defendant. On behalf of the plaintiff, control is shown in that it was to own all of the stock of the new corporation. The crux of the argument seems to be that since Duhrssen was to occupy a decision making position in the new corporation along with the right to receive a share of the profits there is established the existence of joint interest and joint control insofar as there was to be a pooling of skills and services which could be financially remunerative to all parties.

Plaintiff further contends that the parties did arrange for a sharing of profits and losses. The argument proceeds from the explanation that a sale of defendant corporation's assets was not feasible since any price approximating the book net worth would be unacceptable to a reasonable purchaser in view of the company's operating record during the years immediately prior to 1958. On the other hand, Decal was not disposed to relinquish its business at any price much below its then net value. Plaintiff contends that the joint venture arrangement was therefore worked out. If the new enterprise prospered, defendants would ultimately realize an amount for the business which no purchaser would give them. Plaintiff would be able to pay such a sum out of profits, without the necessity of advancing a large capital sum. If, on the other hand, the venture foundered and instead of profits there were losses, all the venturers would share in those losses. The corporate defendant would have lost in that it would have turned over its assets for one third of their net worth and have lost such part of the balance as was not recovered through the operation of the venture. Duhrssen would have lost the share of the profits agreed to be paid him. Plaintiff's loss would have resulted from its inability to pay the agreed rental, thus damaging its financial ability to remain in business. The profit sharing element similarly stems from the deferred payment for Decal's assets. The profits are then measured not only by the cash payment the corporation was to receive but also by the tax savings which would be forthcoming by virtue of the initial loss carried on its books.

This intricate reasoning fails to persuade the court. The amount Decal was to receive was a fixed sum and the resulting "profit" advantages, absent a change in the revenue laws, were also fixed. In this sense the transaction resembles a sale, with a deferred payment spread over a number of years, and not a partnership in profits yet to be derived. Duhrssen's profit sharing appears to be nothing more than an incident of an employment contract. Similarly the loss sharing theory which plaintiff seeks to construct seems forced. If this theory is sufficient to satisfy the profit and loss elements of a joint venture, then one might say that any sale with a deferred payment out of profits to be earned in the future can be raised to the level of a joint venture.

Although I have dealt in detail with the arguments concerning the existence of a joint venture, I do not believe that this question can be resolved on this motion for summary judgment. The real issue here is not labelling the agreement between the parties, but whether in fact any agreement existed. If an agreement was entered into, what were its terms? Did it contain the elements necessary to constitute it a joint venture? Since some of the elements necessary to characterize an agreement as one of joint venture are dependent upon the intent of the parties, ordinarily a trial would be necessary to establish that intent. Similarly, intent is a major factor in determining whether the negotiations which took place ever resulted in an agreement. Notwithstanding defendants' willingness to rely upon the affidavits and depositions of plaintiff to show that no agreement existed, resolution of the questions on this aspect of the case would require the testimony of live witnesses whose credibility can be

judged by the trier of fact. The existence of this issue of fact, however, does not preclude disposition of this case on the motion for summary judgment.

Defendants, although arguing persuasively that no agreement at all was entered into, much less one of joint venture are willing to concede for purposes of their motion that an oral agreement existed. But, they argue, it is barred by the statute of frauds. Part of the difficulty which faces the court in resolving this question is due to plaintiff's shifting position as to what this agreement was and what were its terms. Defendants urge that no matter which of plaintiff's two versions the court chooses to accept, the statute of frauds prevents recovery by plaintiff.

The complaint alleges that on or about September 24, 1958, plaintiff and defendants entered into a joint venture agreement. The terms of that agreement, described as the "purposes" of the joint venture are contained in paragraph 10 of the complaint and have been set out in the margin, supra. In its supplemental memorandum, plaintiff again described the agreement in substantially the same terms. There, plaintiff stated that the joint venture agreement is described in Sachs' opposing affidavit and in the Statement of Material Facts appended to the affidavit. The Statement of Material Facts, however, introduces a different version of the claimed joint venture.[2] Plaintiff is attempting a juggling act, keeping two balls in the air at the same time. No doubt this is due to plaintiff's realization that commitment to either theory raises the insurmountable bar of the statute of frauds.

If the agreement included the full panoply of details as set forth in the complaint and in plaintiff's supplemental memorandum, it is clearly within the statute of frauds and unenforceable. The agreement to sell the assets of Decal falls within the proscription of New York Personal Property Law, McKinney's Consol.Laws, c. 41, § 85.[3] The agreement for the conveyance of a five year lease of Decal's realty to the new corporation comes within New York Real Property Law, McKinney's Consol.Laws, c. 50, §§ 242, 259.[4] The guaranty by plaintiff of the terms of the lease may be said to be a special promise to answer for the debt

---

2. After setting forth the terms of the agreement in substantially the same form as contained in the complaint, plaintiff goes on as follows:

"g. Writings implementing the joint venture agreement reached on September 24, 1958, would be executed not later than thirty days thereafter. After the execution of said written agreements the joint venture would cease to function as a joint venture, all the provisions thereof having been reduced to writings."

3. "§ 85. *Statute of frauds governing contracts to sell goods and sales of goods*

"1. A contract to sell or a sale of any goods of the value of five hundred dollars or upward * * * shall not be enforceable by action unless:

"(a) There is some note or memorandum in writing signed by the party to be charged or his agent in that behalf * * * or

"(b) The buyer has accepted part of the goods and actually received the same, or

"(c) The buyer has given something in part payment."

4. "§ 242. *When written conveyance necessary*

"An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, can not be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing. * * * *"

"§ 259. *When contracts to lease or sell void*

"A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing."

of another. New York Personal Property Law, § 31(2).[5] The agreement to employ Duhrssen for a period of over four years comes within New York Personal Property Law, § 31(1).[6] Additionally, defendants urge that § 20 of the New York Stock Corporation Law is in effect a special statute of frauds applicable here. That section requires the written consent of stockholders of a New York corporation in order for it to sell its operating assets. Compare Belmar Contracting Co. v. State, 233 N.Y. 189, 135 N.E. 240 (1922).

■ Plaintiff does not argue specifically that the foregoing sections of the statute do not apply to the terms of the agreement, but seeks to avoid the bar of the statute of frauds by contending generally that it is inapplicable to joint ventures. Such an oversimplification is hardly accurate. The cases cited by plaintiff do indicate that the courts have carved an exception out of the statute of frauds where the facts indicate either a partnership or a joint venture to deal in real property. The distinction is drawn between oral contracts for the sale, transfer or creation of an interest in real property and a venture to deal in realty. As to the latter the realty is viewed as personal property among the partners to the venture, and the requirements of the statute of frauds relating to real property are not applicable. See Libby v. L. J. Corp., 101 U.S.App.D.C. 87, 247 F.2d 78 (1957); Dayvault v. Baruch Oil Corp., 211 F.2d 335, 339 (10th Cir. 1954); Wooten v. Marshall, supra at 763 of 153 F.Supp.; Mattikow

v. Sudarsky, 248 N.Y. 404, 162 N.E. 296 (1928); Weisner v. Benenson, 275 App. Div. 324, 89 N.Y.S.2d 331 (1st Dept. 1949), aff'd 300 N.Y. 669, 91 N.E.2d 325 (1950); 2 Corbin, Contracts § 411 (1950). But this is not the situation in the case at bar. If the agreement was one of joint venture, it was clearly not a joint venture to deal in real estate. Here there was to be a conveyance of a lease from defendant Decal to the new corporation. Although the new corporation is not a party to this action, there can be no doubt that it is but the alter ego of plaintiff. Thus, it is clear that the exception for joint venture to deal in real estate is not applicable here and does not take the proposed transaction out of the statute of frauds.

Faced with the bar of the statute of frauds if all the terms of this arrangement are included in the joint venture, plaintiff argues that the cited sections of the statute of frauds are not applicable for the joint venture sued upon is really something else. Plaintiff claims that the first two causes of action are not based upon the breach of an agreement to sell the corporate assets, to lease real property for more than one year or to answer for the debt of another. The agreement which plaintiff contends is the basis of recovery is a joint venture whose terms were the negotiation and execution of the written agreements of sale, lease and hiring. The execution of these writings was to take place within thirty days of the oral agreement. Upon execution of these written agreements, argues plaintiff, the joint venture would

5. "§ 31. *Agreements required to be in writing*

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking;

"1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime;

"2. Is a special promise to answer for the debt, default or miscarriage of another person;"

Whether the promise is specifically barred by § 31(2) depends upon whether it is construed as an original promise or as a collateral promise. See Ward v. Hasbrouck, 169 N.Y. 407, 62 N.E. 434 (1902); Diel v. Garvin, 165 Misc. 170, 1 N.Y.S.2d 933 (S.Ct.1937). Plaintiff has not addressed itself specifically to this question, contending generally that this section of the statute is inapplicable.

6. See note 5, supra.

have been fully performed and would have come to an end.[7] Since performance of this "joint venture" was to be had in less than one year, plaintiff urges that New York Personal Property Law § 31(1), the only applicable statute of frauds section, does not impair the validity of this oral agreement.

The authorities in New York are to the contrary. The rule is well established that an oral agreement to execute agreements, where the latter are required by the statute of frauds to be in writing, is itself within the statute of frauds and unenforceable. 300 West End Avenue Corp. v. Warner, 250 N.Y. 221, 228, 165 N.E. 271, 273 (1929); Belmar Contracting Co. v. State, 233 N.Y. 189, 135 N.E. 240 (1922); Dung v. Parker, 52 N.Y. 494 (1873); Amburger v. Marvin, 4 E.D.Smith 393; Kenlon v. Corbin, 268 App.Div. 318, 51 N.Y.S.2d 789 (3d Dept. 1944); Deutsch v. Textile Waste Merchandising Co., 212 App.Div. 681, 209 N.Y.S. 388 (1st Dept. 1925); McLachlin v. Village of Whitehall, 114 App.Div. 315, 99 N.Y.S. 721 (3d Dept. 1906); McGovern v. Madame Elize, Inc., 137 Misc. 599, 244 N.Y.S. 169 (S.Ct. 1930); Peters v. Day, 125 Misc. 41, 210 N.Y.S. 42 (S.Ct.1925). To hold otherwise would be "tantamount to taking the main contract out of the Statute. * * " 3 Williston, Contracts 692 (3d ed. 1960). It would allow a facile evasion of the statute and "the door would be open for the practical nullification of the statute of frauds in a large class of cases." McLachlin v. Village of Whitehall, supra at 318, 99 N.Y.S. at 723. Plaintiff argues that an oral agreement to execute certain other agreements is enforceable, even though the other agreements are unenforceable under the statute of frauds. The case cited in support, Greenspun v. Roos, 48 F.Supp. 281 (E.D. N.Y.1942), is clearly distinguishable on its facts. Furthermore, the statement at 48 F.Supp. at 283 upon which plaintiff relies cites no case, from New York or elsewhere, in support. If the court's separation of the short term oral agreement from the underlying contract may be read as enunciating the rule proffered by plaintiff, that rule cannot be followed here in light of the overwhelming authority of the New York courts to the contrary.

Finally, plaintiff contends that even if the statute of frauds applies to the terms of this agreement, it does not render the venture unenforceable. It is urged that the sole effect of the statute is to convert the agreement into a joint venture at will. Boxill v. Boxill, 201 Misc. 386, 111 N.Y.S.2d 33 (S.Ct.1952) and Pinner v. Leder, 115 Misc. 512, 188 N.Y.S. 818 (1st Dept. 1921), aff'd 200 App.Div. 894, 192 N.Y.S. 946 (1st Dept. 1922) are cited in support. In Pinner v. Leder, the court did not speak in terms of a partnership at will. There, the parties had entered into an oral agreement of partnership. Before the partnership began to function, defendant desired to withdraw and agreed to pay plaintiff a sum of money for plaintiff's consent to the withdrawal. The action was brought to recover the balance over what defendant had already paid. Defendant urged that there was no consideration for his promise to pay since the oral partner-

---

7. Although plaintiff cites no authority for its theory that the venture only involved the execution of the agreements and was to end upon that happening, that view may be supportable. "[T]he rule is well settled that a joint venture may not be carried on by individuals *through* a corporate form." Weisman v. Awnair Corp., 3 N.Y.2d 444, 449, 165 N.Y.S.2d 745, 749, 144 N.E.2d 415, 418, (1957); see Manacher v. Central Coal Co., 284 App.Div. 380, 131 N.Y.S.2d 671 (1st Dept. 1954), aff'd, 308 N.Y. 784, 125 N.E.2d 431 (1955); United States v. Standard Oil Co., 155 F.Supp. 121, 148 (S.D.N.Y. 1957), aff'd, 270 F.2d 50 (2d Cir. 1959). "They cannot be partners *inter sese* and a corporation as to the rest of the world." Jackson v. Hooper, 76 N.J.Eq. 592, 599 75 A. 568, 571, 27 L.R.A.,N.S., 658 (1910). Thus, if a joint venture existed here, it could not have continued beyond the formation of the corporate vehicle. But this does not mean that the thirty day agreement, which plaintiff contends is the joint venture, is not to be tested against the requirements of the statute of frauds.

ship was void under the statute of frauds. Although finding that the oral partnership was void under the statute, the court reasoned that the contract subsisted until it was terminated at the will of either party or until the statute of frauds was affirmatively pleaded. Thus, the court held that the partnership contract was valid at least insofar as it could be utilized as consideration for defendant's promise to pay the sum sued for. The rationale of Pinner is not applicable here. Boxill was an action for an accounting based upon an oral agreement of partnership involving the leasing of certain premises and the operation of a rooming house for some three years. Although the agreement was within the statute of frauds, the court found that a partnership at will existed. The parties there had a going relationship and the partnership at will theory was utilized by the court of equity in order to prevent an obvious injustice which would have resulted had plaintiff been deprived of the fruits of many years labor. The partnership at will theory is an equitable doctrine which is utilized when the parties have operated for a time pursuant to their oral relationship. It is not applicable in the case at bar for even if an agreement of joint venture existed, the parties never commenced to operate as joint ventures. No contracts were signed, no assets changed hands, no lease was conveyed and no business was conducted by the new corporation. Moreover, plaintiff is not suing for an accounting, nor does it make any demand for equitable relief. The complaint is framed strictly in terms of damages for breach of contract. Thus the partnership at will theory cannot be utilized here to take the agreement out of the statute of frauds.

After studying the affidavits, depositions and memoranda the court is of the opinion that this is a classic case of negotiations which failed to come to fruition. Notwithstanding the apparent existence of a factual question, the case can be resolved on the statute of frauds issue without the necessity for a trial.

Extensive study of the issues herein was necessitated by the shifting theories which plaintiff has employed. Plaintiff's dilemma is, however, of its own making. If the agreement upon which plaintiff seeks to recover includes all the terms and conditions of this proposed enterprise, it is clearly barred by the statute of frauds even if a joint venture can be made out. If, on the other hand, the agreement sued upon is the thirty day agreement to execute agreements, one fails to see how that contains the requisite elements of a joint venture, i. e., sharing of profits and losses and joint control. Moreover, since the thirty day agreement is an agreement to agree, it too falls within the statute of frauds. In its attempt to create a joint venture, plaintiff would have the court look beyond the thirty day agreement at the terms, conditions and purposes of the purported venture. But when faced with the statute of frauds, plaintiff would have the court close its eyes to the terms of the main contracts. Plaintiff cannot have it both ways. Under either version of the alleged agreement, plaintiff cannot recover. And even if the two versions be considered in the manner attempted by plaintiff recovery is similarly barred. When all is said and done, we are left here with a jerry-built house of cards on a foundation of shifting sands.

Courts generally are chary in applying the strictures of the statute of frauds, seeking to circumvent its employment by freely reading exceptions into the rules when justice so requires. In this case, however, the facts are such as to lend themselves appropriately to the statute's application. The exceptions urged by plaintiff are not available under the facts of this case. The very purpose of the statute of frauds is to prevent enforcement of the kind of oral agreement pleaded here.

Since the statute of frauds is dispositive of the case, there is no need to explore the subordinate issues discussed in the memoranda. Accordingly, defendants' motion for summary judgment is granted.

Settle Order on Notice.