**DEMIAN, LTD., Plaintiff-Appellant,**

v.

**CHARLES A. FRANK ASSOCIATES, Charles A. Frank and Jaguar International, Inc., Defendants-Appellees.**

**No. 113, Docket 81–7392.**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1981.

Decided Feb. 4, 1982.

Charles A. Frank, pro se.

Freedman & Lorry, P. C., Philadelphia, Pa. (Gary A. Zucker, Brooklyn, N. Y., Phillips & Cappiello, New York City, of counsel), for plaintiff-appellant.

Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

MANSFIELD, Circuit Judge:

In this diversity suit for damages for breach of a contract for services in the importation of men's leather and suede garments, plaintiff-appellant, Demian, Ltd. ("Demian"), the purchaser, appeals from a judgment of the Southern District of New York entered by Judge Charles L. Brieant in favor of the defendants Charles A. Frank Associates, Charles A. Frank and Jaguar International, Inc., New York residents and business organizations (herein collectively referred to as "Frank"), dismissing the complaint after a non-jury trial. We remand the case to the district court for further findings of fact, affirm the dismissal of Frank's counterclaim for commissions, and deny Frank's request for an award of costs, damages, and expenses, including attorneys' fees.

At all pertinent times Demian, a Pennsylvania corporation, was an importer of high grade men's leather garments for sale in the United States and Frank was a service organization with business acquaintances in the Orient. For a commission paid by American importers, Frank would locate manufacturers or sources of supply in the Far East and make arrangements for the manufacture of the goods in the Orient and their importation into the United States. To facilitate importation into the United States of goods made in Korea, Frank entered into an arrangement with K. C. Sun of Da Chong Hong Trading Co., Ltd. ("Sun") in Korea, whereby, for 50% of Frank's commission received for its services, Sun would locate Korean manufacturers and, following Frank's instructions, do anything further required to effectuate the manufacture, sale and importation of goods purchased by Frank's American clients. One of these clients was Demian.

After approving samples of leather jackets to be manufactured in Korea by Koreanna Moulson, Ltd., a manufacturer located by Frank and Sun, who submitted the samples for consideration, Demian placed two

orders with Sun for the purchase of two styles meeting the specifications of the samples. Pursuant to arrangements made by Frank, Demian forwarded to Korea letters of credit in favor of Koreanna, to be honored upon presentation of a certificate by Sun that it had inspected the shipment of the leather jackets made by Koreanna and found them to be of merchantable quality, meeting the sample specifications.

Unfortunately Sun did not properly perform its inspection duties, issuing a certificate that released the purchase price to Koreanna against jackets that did not meet the specifications. In June 1980 Demian brought the present suit against Frank for breach of contract, alleging that in return for commission payments Frank had agreed to:

"(A) Assist plaintiff in the designing of leather jackets which were to be manufactured in the Republic of Korea;

"(B) Arrange for the manufacture of said jackets in the Republic of Korea;

"(C) Inspect said jackets upon completion of the manufacturing to insure that they complied with the standards and specifications required by plaintiff, and in accordance with the terms of a Letter of Credit opened by plaintiff.

"(D) Perform all services necessary to accomplish the importation of the jackets into the United States."

Frank entered a general denial and counterclaimed for a 5% commission "for his services."

At trial Michael Driban, President and owner of Demian, testified that, after Charles A. Frank had described his qualifications and his extensive experience in locating Oriental manufacturers, arranging for their manufacture of goods and importing garments into the United States, they entered into an arrangement under which Frank was to "oversee any program we would enter from start to finish." Frank stated:

"Q What do you mean, from start to finish?

"A From the placing of the orders to making sure that the work was done in time, to make sure the garments were packed in time, that every step of the production process was followed through, that the skins arrived in time to be cut, that the cutting was done in time, that the sewing was done in time, that the skins, when they arrived, were first quality, that when all was said and one [sic], the garments were inspected. Evenness of color, quality of skin, sewing details, etc., were packed, the documents were completed in a satisfactory manner, and that it went out on a ship that would ultimately get to us in time to permit us timely deliveries to our customer, which was our responsibility."

With respect to responsibility for inspection of goods in Korea before release of Demian's letter of credit, Driban testified that Frank advised that full responsibility would be assumed by him or, if he was not in Korea at the time of shipment, by his "man in Korea," K. C. Sun, whom Driban had never met. On cross-examination by Mr. Frank, Driban testified:

"Q Did I ever represent to you as a guarantor of the factory—

"THE COURT: He said yes, you sure did. Why do you keep fooling around? Answer the question.

"A You told me you would be personally or someone from your office would be responsible for the final inspection of those garments. Without a certificate certifying to that effect payment would not be made to the factory."

Frank's defense was that he acted merely as a broker, without assuming responsibility other than to bring the principals together. On his deposition, however, he testified that he entered into a relationship with Mr. Sun whereby Sun would perform numerous services for him in Korea, including location of factories, help in obtaining clients, manufacture of garments, and inspection, and that "[i]f there were requirements that a particular client had that I could not do for the clients because I was not there, he would do it." (App. 45A). Frank testified: "If I gave him instructions, he following them out. . . . Mr. Sun was to execute what I asked him to execute." (App. 47A).

At the close of the trial Judge Brieant, although he found that Frank's "services were totally useless" and he had been a malefactor who had engaged in "unconscionable" conduct, concluded:

"The most the proof shows, an agent was authorized by the principal to delegate a sub-agent and in the absence of some knowledge of it at the time of appointing Sun, that Sun was an improper person to be appointed, there is no liability, no vicarious liability when a sub-agent with the permission of the principal is appointed by an agent to work for the principal, and that is really what happened here with K. C. Sun.

". . . there is no joint venture because, in order to have a joint venture, there must be an agreement proved to share losses and profits.

". . . When two persons could broker in effect like that, neither one becomes the agent for the other, and Mr. Frank does not, by the facts of this case, become the person vicariously liable for the sins and omissions or defaults or delicts [sic] of K. C. Sun, and that is what is sought to be shown here in this case." (App. 37A–38A).

Accordingly the court entered judgment dismissing the complaint. Finding that Frank's services were worthless, he also dismissed its counterclaim for commissions, without costs to either side.

## DISCUSSION

■■■ We do not question the district court's finding that no joint venture existed between the parties since there is no evidence of profit or loss sharing between them, which is essential to recovery on a joint venture theory. *Steinbeck v. Gerosa,* 4 N.Y.2d 302, 317, 175 N.Y.S.2d 1, 13, 151 N.E.2d 170 (1958); *Backus Plywood Corp. v. Commercial Decal, Inc.,* 208 F.Supp. 687, 691 (S.D.N.Y.1962); *Allen Chase & Co. v. White, Weld & Co.,* 311 F.Supp. 1253, 1259 (S.D.N.Y.1970); *Jasper v. Bernstein,* 259 App.Div. 638, 639–40, 20 N.Y.S.2d 362, 363–64 (1st Dept. 1940); *Gordon Co. Inc. v. Garcia Sugars Corp.,* 241 App.Div. 155, 156, 271 N.Y.S. 303 (1st Dept. 1934). Under the

law of agency Frank's liability to Demian for Sun's improper certification turns on whether Sun was employed as Frank's subagent to perform his duties as Demian's agent or as an independent agent of Demian for which it would assume responsibility. If Sun was Frank's subagent, Frank would be liable to Demian for the subagent's conduct. 2 Restatement (Second) of Agency, § 406.

"§ 406. Liability for Conduct of Subagent

"Unless otherwise agreed, an agent is responsible to the principal for the conduct of a subservant or other subagent with reference to the principal's affairs entrusted to the subagent, as the agent is for his own conduct; and as to other matters, as a principal is for the conduct of a servant or other agent." *Id.* 252.

On the other hand, if Sun was not a subagent but a separate agent acting solely for Demian, Frank would not be liable. Restatement (Second) of Agency, §§ 5, 405.

§ 405. Liability for Conduct of Other Agents

"(1) Except as stated in Subsections (2) and (3), an agent is not subject to liability to the principal for the conduct of other agents who are not his subagents.

"(2) An agent is subject to liability to the principal if, having a duty to appoint or to supervise other agents, he has violated his duty through lack of care or otherwise in the appointment or supervision, and harm thereby results to the principal in a foreseeable manner. He is also subject to liability if he directs, permits, or otherwise takes part in the improper conduct of other agents.

"(3) An agent is subject to liability to a principal for the failure of another agent to perform a service which he and such other have jointly contracted to perform for the principal." *Id.* 251.

Here we need not speculate as to the nature of the legal theory asserted by Demian as the basis for its claim against Frank. It does not ask the court to infer from the circumstances that Sun must have

been Frank's subagent rather than an independent agent procured by it as a broker. It claims that Frank breached an express agreement with it to inspect the jackets upon completion of the manufacture "to insure that they complied with the standards and specifications required by plaintiff, and in accordance with the terms of the Letter of Credit opened by plaintiff." (Compl. Par. 6(C)). Under such an agreement Frank would be obligated either personally to inspect the manufactured jackets or to see to it that they were properly inspected by Sun and to issue a certificate or have Sun do so only if they conformed to the samples approved by Demian, which they admittedly did not. If Frank failed to perform these promises and allowed substandard jackets to be certified, he would under elementary principles of contract law be liable in damages to Demian regardless of any joint venture or subagency theory of liability.

The district court does not appear to have considered this issue of whether Frank expressly entered into an agreement with Demian to inspect properly and made no findings with respect to such an agreement. If there were no supporting evidence, we might let stand the dismissal of this claim for breach of an express contract. But here the record contains an abundance of testimony by Driban to the effect that Frank agreed to insure that Sun, whom Frank described as his "man in Korea" who followed Frank's "instructions" and who would "execute what I asked him to execute," would make a proper inspection and issue a certificate only if the jackets conformed to Demian's specifications. Nor does Judge Brieant appear to have discredited Driban as a witness. Indeed at one point he appears to have accepted Driban's testimony that Frank represented himself to be a "guarantor." Judge Brieant's characterization of Mr. Frank, on the other hand, indicates some doubt as to his reliability. The finding that Frank's services were worthless and in violation of his contractual obligations, disentitling him to a commission, is supported by the record and not clearly erroneous.

In view of these circumstances we vacate the judgment dismissing the complaint and remand the case to the district court for further proceedings, findings, and decision. We affirm Judge Brieant's denial of Frank's counterclaim and deny as frivolous Frank's claims for damages, costs, and attorney's fees under 28 U.S.C. §§ 1912, 1927 and Fed.R.App.P. 38. Costs are awarded to Demian.